EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Nicolás Gautier Vega, en su capacidad de Comisionado Electoral del Partido Popular Democrático<br><br>Recurrido<br><br>v.<br><br>Comisión Estatal de Elecciones; Francisco Rosado Colomer, en su capacidad de Presidente de la CEE; Roberto I. Aponte Berríos, en su capacidad de Comisionado Electoral del Partido Independentista Puertorriqueño; Olvin Valentín Rivera, en su capacidad de Comisionado Electoral del Movimiento Victoria Ciudadana; y Edwardo García Rexach, en su capacidad de Comisionado Electoral del Proyecto Dignidad<br><br>Partes con Interés<br><br>Héctor Joaquín Sánchez Álvarez, en su capacidad de Comisionado Electoral del Partido Nuevo Progresista<br><br>Parte Peticionaria en Certificación | 2020 TSPR 131<br><br>205 DPR \_\_\_\_\_ |

Número del Caso: CT-2020-22

Fecha: 28 de octubre de 2020

Abogado de la parte peticionaria
**Comisionado Electoral del Partido Nuevo Progresista:**

Lcdo. Víctor Calderón Cestero

Abogado de la Parte recurrida
**Comisionado Electoral del Partido Popular Democrático:**

Lcdo. Gerardo de Jesús Annoni

Partes con Interés:

**Comisión Estatal de Elecciones:**
Lcdo. Jayson Caraballo Oquendo

**Comisionado Electoral Movimiento
Victoria Ciudadana:**
Lcdo. Olvin Valentín Rivera

**Comisionado Electoral
Proyecto Dignidad:**
Lcdo. Edwardo García Rexach

**Comisionado Electoral
Partido Independentista Puertorriqueño:**
Sr. Roberto Aponte Berríos

Materia: Derecho Constitucional y Derecho Electoral- El Presidente de la Comisión Estatal de Elecciones actuó dentro de las facultades que le confiere el Código Electoral y su reglamento al emitir la Resolución CEE-RS-20-164, la cual valida un mecanismo para subsanar la omisión - por parte de aquel elector que emita su voto adelantado por correo- de proveer copia de una identificación válida, de conformidad con el debido proceso de ley. Por consiguiente, se decreta la validez de la Resolución CEE-RS-20-164, emitida por el Presidente de la Comisión Estatal de Elecciones el 19 de octubre de 2020.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Nicolás Gautier Vega, en su capacidad de Comisionado Electoral del Partido Popular Democrático<br><br>Recurrido<br><br>v.<br><br>Comisión Estatal de Elecciones; Francisco Rosado Colomer, en su capacidad de Presidente de la CEE; Roberto I. Aponte Berríos, en su capacidad de Comisionado Electoral del Partido Independentista Puertorriqueño; Olvin Valentín Rivera, en su capacidad de Comisionado Electoral del Movimiento Victoria Ciudadana; y Edwardo García Rexach, en su capacidad de Comisionado Electoral del Proyecto Dignidad<br><br>Partes con Interés<br><br>Héctor Joaquín Sánchez Álvarez, en su capacidad de Comisionado Electoral del Partido Nuevo Progresista<br><br>Parte Peticionaria en Certificación | CT-2020-22 |
| --- | --- |

Opinión del Tribunal emitida por el Juez Asociado señor FELIBERTI CINTRÓN.

En San Juan, Puerto Rico, a 28 de octubre de 2020.

En la antesala de los próximos comicios generales, se nos presenta una controversia de naturaleza electoral novel, esta vez, relacionada con la votación adelantada por correo. Nos toca determinar específicamente si la adopción de una disposición que permita que los electores que emitieron su

voto mediante correo postal, pero omitieron enviar la copia de una identificación válida, subsanen esa deficiencia, fue alegadamente acogida de manera *ultra vires* por el Presidente de la Comisión Estatal de Elecciones (Presidente o Presidente de la CEE) o si su determinación fue una razonable y en cumplimiento con las garantías constitucionales aplicables. De entrada, adelantamos que la actuación del Presidente estuvo dentro del marco de las facultades establecidas en el Código Electoral y su Reglamento, así como en su deber de ser garante y facilitador del ejercicio del derecho fundamental al sufragio de los electores, sin limitaciones procesales que atenten contra la validez y adjudicación de éste, sin contar antes con las garantías de un debido procedimiento de ley. Veamos.

## I.    Tracto fáctico y procesal

El pasado 14 de octubre de 2020, el Comisionado Electoral del Partido Nuevo Progresista, Sr. Héctor Joaquín Sánchez Álvarez (Comisionado Electoral del PNP o peticionario) presentó ante la consideración del seno de la Comisión Estatal de Elecciones (Comisión o CEE) una moción para proponer la inclusión de un inciso al Artículo V del borrador del *Manual para el procedimiento de voto adelantado por correo para las Elecciones Generales y el Plebiscito de 2020* (borrador del Manual). Específicamente, propuso añadir un inciso "D", el cual leía del siguiente modo:

> D. En caso de que el elector no haya incluido la copia de la identificación con foto vigente[,] la JAVAA tendrá un término de 24 horas, a partir del recibo de las papeletas

[,] para notificar al elector sobre la deficiencia. La JAVAA deberá efectuar la notificación a través del número de teléfono, dirección de correo electrónico y dirección postal, que fue provista por el elector en la solicitud de voto adelantado. En dicha notificación, la JAVAA deberá apercibir al elector de que no proveer la copia de la identificación en o antes del 25 de noviembre de 2020, su voto no podrá ser adjudicado, tal como dispone el Código Electoral 2020. El elector podrá subsanar la deficiencia entregando copia de la identificación a través del correo electrónico de la JAVAA, en la Comisión o el fax (787) 777-8353, (787) 294-3120 o personalmente.[1]

Asimismo, se proveyeron dos formularios denominados "VOTE-BY-MAIL BALLOT CURE" y "DECLARACIÓN PARA RECTIFICACIÓN DE VOTACIÓN POR CORREO", respectivamente.[2]

Sometido el asunto ante la CEE, los Comisionados Electorales emitieron sus votos, los cuales fueron recogidos por la Secretaria de la CEE en la *Certificación de Desacuerdo CEE-AC-20-364*. El resultado de la votación fue de cuatro (4) votos en contra y un (1) voto a favor, desglosados de la siguiente manera:

| Comisionado Electoral PNP | **A favor** - Hay grandes confusiones sobre el proceso de voto por correo porque las instrucciones provistas no han sido específicas ni libres de confusión. Tenemos una población de 60 años o más quienes son los que han solicitado el voto adelantado y se le debe dar la oportunidad de que puedan |
|---|---|

---

[1] Véase *Resolución CEE-RS-20-164*, Apéndice del *Recurso urgente de certificación intrajurisdiccional*, pág. 8.

[2] Íd.

|                          |                                                                                                                                                                                  |
|--------------------------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                          | subsanar. Si no se le adjudica el voto al elector sin la debida notificación se le está coartando su derecho al voto y el debido proceso de ley.                                  |
| Comisionado Electoral PPD | **En contra** – El Artículo 9.39 inciso 3 establece que, si no incluye copia de la identificación, no se adjudicará el voto. Las instrucciones de JAVAA establecen lo mismo. |
| Comisionado Electoral PIP | **En contra** – El Código Electoral establece ese requisito como un método de fiscalización para garantizar que el voto lo emite una persona real.                          |
| Comisionado Electoral MVC | **En contra** – Se suscribe a los argumentos del PPD y PIP. Además, manifiesta que sería ilusorio creer que JAVAA tiene la capacidad de realizar ese trabajo en 24 horas. También expresa que la fecha de 25 de noviembre de 2020 enviaría un mensaje nefasto al país. |
| Comisionado Electoral PD | **En contra** – Una lectura clara del Código te permite ver que se requiere esa copia de la identificación para garantizar la pureza de los procesos.[3] |

Ante el desacuerdo habido, **el 19 de octubre de 2020 a la 1:05 p.m.**, el Presidente de la CEE, Hon. Francisco Rosado Colomer, **emitió y notificó** la *Resolución CEE-RS-20-164*.[4] Por medio de ésta, acogió la sugerencia presentada por el Comisionado Electoral del PNP para añadir un inciso "D" al

---

[3]   Íd., págs. 8-9.

[4]   Íd., págs. 8-18.

Artículo V del borrador del Manual y modificó el texto propuesto a los fines de acortar a tres (3) días el término que tendría el elector que vote por adelantado por correo y no haya incluido copia de su identificación con foto para subsanar tal omisión.[5] De esta forma, el texto del inciso "D" incluido al referido Artículo V del borrador del Manual quedó consignado del siguiente modo:

> D.      Falta de acompañar copia de identificación del elector
>
> En caso de que el elector no haya incluido la copia de la identificación con foto vigente, **la JAVAA deberá notificar al elector de tal deficiencia a la brevedad y no más tarde de veinticuatro horas de haber identificado la deficiencia, como parte del proceso de apertura del sobre Número 2.** La JAVAA deberá efectuar la notificación a través del número de teléfono, dirección de correo electrónico o dirección postal que fue provista por el elector en la solicitud de voto adelantado o que resulte de su registro electoral actualizado. **En dicha notificación, la JAVAA deberá apercibir al elector que, de no proveer la copia de la identificación en o antes de tres (3) días laborables de la notificación de la deficiencia, su voto no será adjudicado.** El elector podrá subsanar la deficiencia entregando copia de la identificación a través del correo electrónico de la JAVAA, personalmente en la Junta de Inscripción Permanente o enviando copia al fax: 787-777-8358.
>
> En caso de no subsanar el elector tal deficiencia, la JAVAA notificará al elector la decisión de invalidar su voto, apercibiéndole de su derecho de pedir revisión conforme a la Sección 9.1 del Reglamento Voto Ausente y Voto Adelantado de

---

[5]   Íd.

Primarias 2020 y Elecciones Generales y Plebiscito 2020.[6] (Énfasis suplido).

Inconforme con la *Resolución* CEE-RS-20-164, el 21 de octubre de 2020 a las 12:44 p.m., el Comisionado Electoral del Partido Popular Democrático, Sr. Nicolás Gautier Vega (Comisionado Electoral del PPD o recurrido), presentó un *Escrito de revisión judicial* ante el Tribunal de Primera Instancia de San Juan.[7] En síntesis, alegó que el Presidente de la CEE enmendó, sin autoridad para esto, el Artículo 9.39 del Código Electoral de Puerto Rico de 2020, Ley Núm. 58-2020 (Código Electoral) y la Sección 6.8 del *Reglamento de voto ausente y voto adelantado de las Primarias 2020 y Elecciones Generales y Plebiscito 2020*, aprobado el 13 de marzo de 2020 y revisado el 9 de septiembre de 2020 (Reglamento de voto adelantado). En concreto, sostuvo que el texto de las disposiciones antes mencionadas establecía claramente que sólo se contabilizarían los votos adelantados válidamente emitidos y recibidos antes de la fecha del escrutinio general del evento electoral, y que la validez de dichos votos dependía, entre otras cosas, de que el elector incluyera copia de su tarjeta electoral o de cualquier otra identificación con foto vigente y autorizada por el Código Electoral. Añadió que la determinación tomada

---

[6] Íd., pág. 17. Véase además, *Manual de Procedimiento para el voto adelantado por correo para [las] Elecciones Generales y Plebiscito 2020*, aprobado el 20 de octubre de 2020, Apéndice del *Recurso urgente de certificación intrajurisdiccional*, págs. 55-65, 62.

[7] Véase *Recurso de revisión judicial*, Apéndice del *Recurso urgente de certificación intrajurisdiccional*, págs. 1-8.

por el Presidente de la Comisión en la *Resolución* CEE-RS-20-164 era *ultra vires*, por ser contraria a lo dispuesto en el Artículo 3.4(5) del Código Electoral, el cual exige el voto unánime de los Comisionados cuando se llevan a cabo enmiendas a los reglamentos.  De esta forma, el recurrido solicitó que la *Resolución* CEE-RS-20-164 fuera revocada y dejada sin efecto.

Así las cosas, el 21 de octubre de 2020, el Tribunal de Primera Instancia emitió una *Orden de mostrar causa* en la que ordenó al Comisionado del PPD notificar el *Recurso de revisión judicial* a todas las partes recurridas y partes con interés dentro del término de veinticuatro (24) horas de la expedición de la orden.[8]  Igualmente, concedió a las partes el término de veinticuatro (24) horas, posteriores a su notificación, para expresar su posición.

En la misma fecha, el Presidente de la CEE emitió la *Certificación de Desacuerdo-Resolución* CEE-AC-20-387, por virtud de la cual, mediante votación de cuatro (4) a favor y uno (1) en contra, se aprobó el *Manual de procedimientos para el voto adelantado por correo para Elecciones Generales y Plebiscito 2020* (Manual de voto adelantado), "según enmendado por el CEE-AC-20-362 y la CEE-RS-20-164".[9]  El

---

[8]  Véase *Orden de mostrar causa*, Caso Núm. SJ2020CV05675, Apéndice del *Recurso urgente de certificación intrajurisdiccional*, págs. 25-26.

[9]  Véase *Certificación de desacuerdo-resolución CEE-AC-20-387*, Apéndice del *Recurso urgente de certificación intrajurisdiccional*, págs. 53-54.

Comisionado Electoral del PPD no solicitó la revisión de esta determinación.

El 23 de octubre de 2020, la CEE compareció al foro primario mediante *Moción en cumplimiento de orden*.[10] Expresó, en síntesis, que los electores tienen derecho a que el voto por correo tenga las mismas garantías y protecciones que el voto del resto de los votantes.[11] Por consiguiente, alegó que el Presidente de la CEE, como representante del interés público, tenía la facultad y el deber de garantizarle el derecho fundamental al voto y el correspondiente debido proceso de ley a los electores que enfrenten la imposibilidad o dificultad para asistir a sus Centros de Votación por razón de las declaraciones oficiales de emergencia emitidas por el Gobierno Federal y el Gobierno Estatal a consecuencia de la pandemia del coronavirus (COVID-19). En particular, argumentó lo siguiente:

> De la misma forma el elector con derecho a voto adelantado por correo que por alguna razón no envíe copia de su identificación, **debe tener esa oportunidad de subsanar y enviar la copia de su tarjeta de identificación para garantizar su derecho al voto**. Como el resultado de la falta de identificación puede resultar en que ese voto no sea contado, o privarle el derecho fundamental al voto del elector, **se activa la garantía constitucional de debido proceso de ley**. La CEE tiene el deber de notificar al elector de la falta de la copia de identificación, y debe darle la oportunidad de ser oído y de enviar dicha copia en un término

---

[10] Véase *Moción en cumplimiento de orden*, Caso Núm. SJ2020CV05675, Apéndice del *Recurso urgente de certificación intrajurisdiccional*, págs. 30-43.

[11] Íd., pág. 40.

corto de tres (3) días por correo o por correo electrónico a JAVA, a la Comisión o una JIP.

**No proveer a los electores que solicitaron voto adelantado por correo de un mecanismo para subsanar una deficiencia procesal**, motivada por no haber incluido copia de su identificación personal, equivale a una <u>**actuación irrazonable, arbitraria y caprichosa**</u>. Sostener tal determinación conllevaría <u>**privar al elector de la forma en que éste decidió ejercer su derecho al voto y resolver lo contrario serviría para promover la abstención electoral de los electores más vulnerables**</u>.

[…] <u>**Los derechos de nuestros ciudadanos no pueden estar sujetos a reglas rígidas y estáticas que en nada contribuyen a adelantar los fines de esta Comisión y de salvaguardar el derecho al voto de los electores**</u>. (Negrillas y subrayado en el original).[12]

Ese mismo día a las 7:15 p.m., la CEE presentó una *Moción de desestimación por academicidad*,[13] a la cual se unió el Comisionado Electoral del PNP.[14] En resumen, la CEE alegó que el asunto planteado en el *Escrito de revisión judicial* presentado por el Comisionado Electoral del PPD se tornó académico tras aprobarse el Manual de voto adelantado, según constaba en la *Certificación de desacuerdo-resolución* CEE-AC-20-387. Añadió que, dicha determinación había advenido final y firme, pues el Comisionado Electoral del PPD no había solicitado la revisión de ésta dentro del término, ya

---

[12] <u>Íd.</u>, pág. 42.

[13] Véase *Moción de desestimación por academicidad*, Caso Núm. SJ2020CV05675, Apéndice del *Recurso urgente de certificación intrajurisdiccional*, págs. 45-52.

[14] Véase *Moción uniéndose a moción de desestimación por academicidad* Caso Núm. SJ2020CV05675, Apéndice del *Recurso urgente de certificación intrajurisdiccional*, págs. 69-72.

transcurrido, de cuarenta y ocho (48) horas, según establecido en el Artículo 13.2(2) del Código Electoral.

Así el trámite, el sábado, 24 de octubre de 2020 el Comisionado Electoral del PNP compareció ante este Tribunal mediante un *Recurso urgente de certificación intrajurisdiccional*, y solicitó nuestra intervención. El domingo, 25 de octubre de 2020, emitimos una *Resolución* mediante la cual paralizamos los procedimientos ante el Tribunal de Primera Instancia y concedimos a las partes recurridas e interesadas hasta las 11:00 a.m. del 26 de octubre de 2020 para expresar su posición con respecto al recurso de certificación presentado.[15]

En cumplimiento de orden, el 26 de octubre de 2020, tanto el Presidente de la CEE como el Comisionado Electoral del PPD presentaron escritos exponiendo sus posiciones respecto a la controversia ante nos. Con relación al *Escrito exponiendo posición de Comisión Estatal de Elecciones* presentado por el Presidente de la CEE, éste reiteró los argumentos anteriormente esbozados. En esencia, sostuvo que la *Resolución CEE-RS-20-164* fue producto de un ejercicio de las facultades que el Código Electoral y su Reglamento le confieren, dirigido a proteger el derecho fundamental del elector a ejercer su voto. A esos efectos, puntualizó que las personas que suelen solicitar el voto adelantado son las

---

[15] Véase *Resolución* emitida el 25 de octubre de 2020, Caso Núm. CT-2020-22.

más vulnerables, por tratarse de personas con impedimentos, enfermedades crónicas y mayores de sesenta (60) años y que -ante el estado de emergencia ocasionado por el COVID-19- actuó de conformidad con las exigencias constitucionales que le exigen garantizar el derecho al voto de los ciudadanos sin ataduras ni tecnicismos innecesarios.

De otra parte, mediante un escrito intitulado *Posición del Comisionado Electoral del Partido Popular Democrático*, el Comisionado Electoral del PPD insistió en que tanto el Código Electoral como el Reglamento de voto adelantado disponen como requisito para la validación del voto por correo que las papeletas sean acompañadas de una copia de identificación del elector válida. Por igual, arguyó que el Presidente de la CEE actuó contrario a derecho al enmendar tales estatutos sin contar con autoridad para tal proceder. Afirmó que dicha enmienda requería la aprobación por votación unánime de todos los Comisionados Electorales y que el Código Electoral impedía que el Presidente de la CEE actuara en ausencia de ese requisito.

De esta forma, contando con la comparecencia de las partes involucradas en esta controversia, estamos en posición de resolver.

## II.   Derecho aplicable

### A. Recurso de certificación intrajurisdiccional

Como hemos reiterado en diversas ocasiones, la certificación intrajurisdiccional es un mecanismo procesal extraordinario y discrecional que podemos expedir a petición

de parte, o *motu proprio*, para elevar ante nuestra consideración cualquier asunto pendiente ante el Tribunal de Primera Instancia o el Tribunal de Apelaciones. Pierluisi-Urrutia *et al.* v. CEE *et al.*, 2020 TSPR 82, 204 DPR __ (2020), pág. 10; Senado de PR v. Gobierno de PR, 2019 TSPR 138, 203 DPR __ (2019), págs. 4-5; U.P.R. v. Laborde Torres y otros, 180 DPR 253, 272 (2010). Al considerar su expedición, debemos evaluar factores tales como si se plantean cuestiones de interés público que podrían incluir asuntos sustanciales al amparo de la Constitución de Puerto Rico o los Estados Unidos; la etapa en que se encuentra el caso; la urgencia y complejidad de la controversia, y la necesidad que pueda existir de presentar prueba. Pierluisi-Urrutia *et al.* v. CEE *et al.*, *supra*, pág. 10; Senado de PR v. Gobierno de PR, *supra*, págs. 4-5; Rivera Schatz v. ELA y C. Abo. PR. II, 191 DPR 791, 849 (2014); Regla 52.2(d) de Procedimiento Civil, 32 LPRA Ap. V.[16]

Asimismo, hemos reiterado la idoneidad de la utilización de este mecanismo en controversias que involucren asuntos electorales de alto interés público, o cuando se cuestiona la legitimidad de los procesos democráticos y nuestras instituciones. Pierluisi-Urrutia *et al.* v. CEE *et al.*,

---

[16]   Véase también, Art. 3.002s(f) de la Ley Núm. 201- 2003, conocida como Ley de la Judicatura de 2003, 4 LPRA sec. 24s(f); Artículo 13.1 del Código Electoral de Puerto Rico de 2020, Ley Núm. 58-2020 (Código Electoral de 2020); Regla 52.2(d) de Procedimiento Civil de 2009, 32 LPRA Ap. V; y la Regla 24s(e) del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B. Véase, también, R. Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil*, 6ta ed., LexisNexis Puerto Rico, 2017, Sec. 5623, pág. 574.

*supra*, pág. 10; Senado de PR v. Gobierno de PR, *supra*, págs. 4-5; P.I.P. v. E.L.A. *et al.*, 186 DPR 1, 9 (2012); Mundo Ríos v. CEE *et al.*, 187 DPR 200, 206 (2012). Véase también, McClintock v. Rivera Schatz, 171 DPR 584 (2007); Suárez v. C.E.E. I, 163 DPR 347 (2004) (*Per Curiam*).

### B. Derecho fundamental al sufragio y el debido proceso de ley

El derecho al voto es el pilar de nuestro sistema democrático; es a través de su ejercicio que el Pueblo ejerce su poder soberano y expresa su voluntad. Pierluisi-Urrutia *et al.* v. CEE *et al.*, *supra*; Ramírez de Ferrer v. Mari Brás, 144 DPR 141, 173 (1997) (citando a P.P.D. v. Admor. Gen. de Elecciones, 111 DPR 199, 207 (1981)). Se trata, pues, de "uno de los derechos más preciados de nuestra ciudadanía". Granados v. Rodríguez Estrada I, 124 DPR 1, 6 (1989).

Nuestro derecho fundamental al sufragio está garantizado por la Constitución de Estados Unidos - específicamente, por la Décimo Cuarta Enmienda - así como por la Constitución de Puerto Rico.

En la Constitución de Puerto Rico, el derecho al sufragio surge consignado a partir de su Preámbulo, en donde se reconoce -en virtud de nuestro sistema democrático- que **la voluntad del Pueblo es la fuente del poder público, que el orden político queda subordinado a los derechos de las personas, y que debe asegurarse "la libre participación del ciudadano en las decisiones colectivas"**. (Énfasis suplido). Const. PR, Preámbulo, LPRA, Tomo 1. De la misma forma, la Sección 1 del Artículo I de nuestra Carta Magna

reconoce que, en nuestro sistema de gobierno, el "poder político emana del [P]ueblo y se ejercerá con arreglo a su voluntad". Art. I, Sec. 1, Const. PR, LPRA, Tomo 1.

En protección de este derecho fundamental, la Sección 2 del Artículo II de la Constitución de Puerto Rico requiere que: "[l]as leyes garanti[cen] la expresión de la voluntad del [P]ueblo mediante el sufragio universal, igual, directo y secreto, y prote[jan] al ciudadano contra toda coacción en el ejercicio de su prerrogativa electoral". Art. II, Sec. 2, Const. PR, LPRA, Tomo 1.

La Constitución de Puerto Rico delegó en la Asamblea Legislativa la función de regular el derecho al voto, así como los procesos electorales. Pierluisi-Urrutia *et al.* v. CEE *et al.*, *supra*, pág. 5; McClintock v. Rivera Schatz, *supra*, pág. 597. Dicha autoridad surge de la Sección 4 del Artículo VI de la Constitución de Puerto Rico, la cual dispone, en lo pertinente, que

> [l]as elecciones generales se celebrarán cada cuatro años en el día del mes de noviembre que determine la Asamblea Legislativa. En dichas elecciones serán elegidos el Gobernador, los miembros de la Asamblea Legislativa y los demás funcionarios cuya elección en esa fecha se disponga por ley.
>
> Será elector toda persona que haya cumplido dieciocho años de edad, y reúna los demás requisitos que se determine por ley. Nadie será privado del derecho al voto por no saber leer o escribir o por no poseer propiedad.
>
> **Se dispondrá por ley todo lo concerniente al proceso electoral y de inscripción de electores,** así como lo relativo a los partidos políticos y candidaturas.

> Todo funcionario de elección popular será elegido por voto directo y se declarará electo aquel candidato para un cargo que obtenga un número mayor de votos que el obtenido por cualquiera de los demás candidatos para el mismo cargo. (Énfasis suplido). Art. VI, Sec. 4, Const. PR, LPRA, Tomo 1.

De conformidad con el precitado mandato constitucional, este Tribunal ha reconocido el amplio poder de la Asamblea Legislativa para reglamentar todo lo concerniente al proceso electoral, incluyendo los requisitos para ejercer el derecho al voto en nuestra jurisdicción. *Ramírez de Ferrer v. Mari Brás*, *supra*, pág. 172; *P.S.P, P.P.D., P.I.P. v. Romero Barceló*, 110 DPR 248, 257 (1980). Ahora bien, esa facultad se ve limitada por los postulados dispuestos en la citada Sección 2 del Artículo II de la Constitución de Puerto Rico, *supra*. *Ramírez de Ferrer v. Mari Brás*, *supra*, pág. 173. A esos efectos, hemos señalado que "[l]a cláusula constitucional expresamente dirigida a garantizar [el derecho al voto] no puede quedar sin contenido, como ciertamente quedaría si el margen de autoridad de la Asamblea Legislativa, para ordenar y regular el ejercicio de la franquicia electoral fuese absoluto". *P.S.P., P.P.D., P.I.P. v. Romero Barceló*, *supra*, pág. 257. Y es que "[el] modo dispuesto por nuestra Constitución para votar, además de proyectarse como uno de los más preciados derechos de nuestros ciudadanos, constituye también el medio a través del cual el Estado descarga su importante obligación de

proteger el libre albedrío del elector". P.N.P. v. Rodríguez Estrada, Pres. C.E.E., 123 DPR 1, 21 (1988).

Como señaláramos, los principios fundamentales sobre el derecho al voto también encuentran base en la Constitución Federal. En ese sentido, el Tribunal Supremo Federal ha expresado lo siguiente:

> Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections. A consistent line of decisions by this Court in cases involving attempts to deny or restrict the right of suffrage has made this indelibly clear. It has been repeatedly recognized that all qualified voters have a constitutionally protected right to vote, and to have their votes counted. (Citas omitidas). Reynolds v. Sims, 377 US 533, 554 (1964) (haciendo referencia a *Ex parte* Yarbrough, 110 US 651 (1884) y a United States v. Mosley, 238 US 383 (1915)).

Asimismo, el Tribunal Supremo de Estados Unidos ha manifestado que: "[t]he right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government". Íd., pág. 555. De esta forma, ha puntualizado que: "any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized". Íd., pág. 562. Véase además, Harper v. Virginia St. Bd. of Elections, 383 US 993 (1969).

De otra parte, el debido proceso de ley "se refiere al 'derecho de toda persona a tener un proceso justo con todas las debidas garantías que ofrece la ley, tanto en el ámbito judicial como en el administrativo'". Aut. Puertos v. HEO, 186 DPR 417, 428 (2012) (citando a Marrero Caratini v.

Rodríguez Rodríguez, 138 DPR 215, 220 (1995)). Esta garantía constitucional opera en dos (2) modalidades distintas, a saber: la vertiente sustantiva y la procesal. La primera, "persigue proteger y salvaguardar los derechos fundamentales de la persona". U. Ind. Emp. A.E.P. v. A.E.P., 146 DPR 611, 616 (1998); Rodríguez Rodríguez v. E.L.A., 130 DPR 562 (1992). Mientras que, la vertiente procesal, "le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y de propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo". U. Ind. Emp. A.E.P. v. A.E.P., *supra*, pág. 616; Rodríguez Rodríguez v. E.L.A., *supra*, pág. 562.

Es conocido que la activación de esta garantía constitucional requiere, en primera instancia, que exista un interés de libertad o propiedad que proteger. Íd. Cumplida tal exigencia, procede la determinación de cuál sería el procedimiento exigido. Íd. En ese sentido, hemos expresado que **"[m]ientras más fuerte sea el interés individual afectado y mayor respaldo social y constitucional tenga, el debido proceso de ley se torna más exigente".** (Énfasis suplido). Vélez Ramírez v. Romero Barceló, 112 DPR 716, 732 (1982) (haciendo referencia a Addington v. Texas, 441 US 418 (1979)).

Se ha reconocido como características medulares del debido proceso de ley que éste sea justo e imparcial. Aut. Puertos v. HEO, *supra*, págs. 429-430. Asimismo, se han "identificado componentes básicos del debido proceso de ley,

tales como una notificación adecuada y la oportunidad de ser escuchado y de defenderse". U. Ind. Emp. A.E.P. v. A.E.P., 146 DPR 611, 616 (1998). Con ello en mente, hemos señalado que: "[l]os factores que deben analizarse para determinar si un procedimiento cumple con los requisitos constitucionales del debido proceso de ley son: (1) el interés privado que puede resultar afectado por la actuación oficial; (2) el riesgo de una determinación errónea debido al proceso utilizado y el valor probable de garantías adicionales o distintas, y (3) el interés gubernamental protegido en la acción sumaria, incluso la función de que se trata y los cargos fiscales y administrativos que conllevaría imponer otras garantías procesales". Íd.; Vélez Ramírez v. Romero Barceló, *supra*, págs. 730-731.

Cónsono con lo anterior, hemos establecido que "la Comisión Estatal de Elecciones, como guardián del interés público en los procesos electorales y principal albacea del valor del voto de cada ciudadano, debe observar […] las garantías que emanan del debido proceso de ley, tanto en la modalidad sustantiva como en la procesal". (Escolio omitido). Gautier Vega y otros v. Joaquín Sánchez, 2020 TSPR 124, 205 DPR __ (2020), pág. 14. Así, en PPD v. Admor. Gen. de Elecciones, *supra*, expresamos, en el contexto de un procedimiento de recusación, que

> *el elector debe tener amplia oportunidad de defender su voto*. La Ley Electoral consagra entre los derechos y prerrogativas de los electores 'garantía a cada persona del derecho al voto, igual, libre, directo y secreto'. Art. 2.001, inciso 2 (16 LPRA sec.

3051(2)). Ello está en armonía con el mandato constitucional. Para que esa garantía sea efectiva, el elector cuyo voto se impugna debe tener derecho a contradecir la recusación, Art. 5.034 (16 LPRA sec. 3234), y a comparecer y ser oído en la vista en que se examine y pueda adjudicarse la procedencia de la recusación. A ese fin, debe ser citado con suficiente antelación y de manera efectiva. No debe bastar, a este efecto, un mero diligenciamiento negativo de una citación. Debe quedar demostrado que se hicieron esfuerzos razonables para notificarle. **El valor de un voto no puede hacerse depender de unas diligencias incompletas que en ocasiones son hechas por personas que pudieran tener mucho interés en que dicho voto no se cuente.**

Lo expresado no quiere decir que el elector no tenga obligaciones que cumplir para hacer valer su voto, una vez se le recusa. Ya nos hemos referido al Art. 5.034 de la Ley Electoral, 16 LPRA sec. 3234, que dispone la manera de recusar a un elector y que requiere que '[s]i el elector recusado niega su recusación, deberá hacerlo bajo su firma y juramento al dorso de la papeleta, pero si no la negare, su voto no se contará y será nulo '. Conforme a esta disposición, el elector no puede cruzarse de brazos. Si no niega la recusación en el momento en que es hecha y ésta expone hechos que, de ser ciertos, constituyen motivo válido para anular su voto, éste no se contará y será nulo. (Negrillas en el original y bastardillas suplidas). Íd., págs. 232-233.

## C. Código Electoral de Puerto Rico de 2020, Ley Núm. 58-2020, según enmendada

Surge de la Exposición de Motivos del Código Electoral que dicho estatuto consagra al elector como el **eje y protagonista de nuestro sistema electoral, empoderado de su derecho al voto y con acceso fácil al ejercicio de éste "sin limitaciones ni condiciones procesales que, irrazonablemente [lo] menoscaben, limiten o compliquen".** (Énfasis suplido).

Entre las definiciones pertinentes del Código Electoral, se encuentra el Artículo 2.3(47) que cataloga a la Junta Administrativa de Voto Ausente y Adelantado (JAVAA) como el "[o]rganismo electoral de la Comisión con Balance Institucional que se crea con el propósito de administrar el proceso de solicitud, Votación y adjudicación de los Votos Ausentes y **Votos Adelantados**". (Énfasis suplido).

Asimismo, el Artículo 2.3(110) precisa que el voto adelantado es un

> [m]étodo especial de Votación para garantizar el ejercicio del derecho al voto a los Electores elegibles, activos y domiciliados en Puerto Rico, cuando el día determinado para realizar una Votación confronten barreras o dificultades para asistir a su Centro de Votación. Esta Ley establece las categorías mínimas de los Electores que son elegibles para este tipo de Votación y la Comisión puede incluir categorías adicionales. Como mínimo, debe realizarse en Centros de Votación adelantada habilitados por la Comisión para los confinados en instituciones penales, los pacientes encamados en sus hogares y hospitales; y los envejecientes que pernoctan en casas de alojamiento.

De otra parte, vemos que del Artículo 3.2(3) surge la facultad de la CEE para aprobar las reglas y los reglamentos necesarios para implementar las disposiciones del Código Electoral. El **Artículo 3.4** regula la forma en que la CEE tomará las decisiones sobre asuntos de específica naturaleza electoral a través de los Comisionados Electorales y del Presidente de la CEE. A continuación, por su relevancia, citamos las disposiciones específicas de dicho articulado:

> (1) Las decisiones de la Comisión relacionadas con asuntos de específica naturaleza electoral se tomarán con la unanimidad de los

Comisionados Electorales propietarios presentes que la componen y se consignarán mediante Certificación de Acuerdo suscrita por el Secretario.

(2) El voto del Presidente solo será necesario cuando no haya unanimidad entre los Comisionados Electorales, a menos que otra cosa se disponga en esta Ley.

(3) Toda moción que se presente ante la Comisión durante una reunión por cualquiera de los Comisionados Electorales deberá ser considerada de inmediato para discusión y Votación en la próxima reunión de la Comisión, sin necesidad de que la misma sea secundada. Además, las mociones podrán ser presentadas por escrito ante el Secretario y notificadas a los Comisionados Electorales y el Presidente, en cuyo caso será considerada para discusión y votación, sin necesidad de que las mismas sean secundadas, en la próxima reunión de la Comisión. No podrán ser consideradas mociones cuyo término entre la notificación y la reunión sea menor de cuarenta y ocho (48) horas. La falta de notificación, según requerida en esta Ley, impedirá que la moción sea considerada hasta tanto cumpla con este requisito.

**(4) En ausencia de la unanimidad de los Comisionados Electorales presentes, el Presidente deberá decidir** a favor o en contra no más tarde de los diez (10) días a partir de la ausencia de unanimidad. **En estos casos, la determinación del Presidente se considerará como la decisión de la Comisión y podrá solicitarse su revisión judicial conforme a lo dispuesto en esta Ley.**

(5) Toda **enmienda** al reglamento para una Votación y su escrutinio general, que no sean Primarias internas de los Partidos Políticos estatales o nacionales ni Elecciones Especiales de Afiliados que se proponga dentro de los noventa (90) días antes de la correspondiente Votación, requerirá el voto unánime de los Comisionados Electorales presentes. La ausencia de unanimidad en este caso constituye la no aprobación de la enmienda propuesta y no podrá ser votada ni resuelta por el Presidente.

(6) Cualquier enmienda sobre la inclusión de **otra categoría de Voto Adelantado** durante los noventa (90) días antes de la correspondiente Elección General, se hará con la unanimidad de los Comisionados Electorales presentes. La ausencia de unanimidad en este caso constituye la no aprobación de la propuesta categoría y no podrá ser votada ni resuelta por el Presidente.

(a) En caso de una **declaración oficial de emergencia del Gobierno federal o estatal** coincidir con los noventa (90) días previos al día de una Votación, que no sean Primarias internas de los Partidos Políticos estatales o nacional, y no se cuente con la unanimidad de los Comisionados Electorales presentes para añadir categorías de **Voto Adelantado, el Presidente podrá crearlas para garantizar el derecho fundamental al voto de los Electores que, por razón de dicha emergencia, enfrenten la imposibilidad o dificultad para asistir a sus Centros de Votación.**

(b) Iguales criterios y procedimientos se utilizarán en los casos de declaración de emergencia que requiera la apertura de Centros de Votación y extender las fechas límites para el envío o recibo de materiales de Votación y papeletas de Voto Ausente y Voto Adelantado. En estos casos, la determinación del Presidente podrá incluir la **transmisión electrónica** y/o la utilización del USPS. (Énfasis suplido).

En lo concerniente a otras facultades y deberes del Presidente, el Artículo 3.8 lo cataloga como la **máxima autoridad ejecutiva** y administrativa de la Comisión, **responsable de la supervisión de los procesos y eventos electorales en un ambiente de pureza e imparcialidad absoluta.** A su vez, establece que en el desempeño de esa encomienda tendrá, entre otras facultades y deberes no taxativos, el de

[c]umplir y hacer **cumplir las disposiciones y los propósitos de esta Ley, la Constitución de Puerto Rico y de Estados Unidos de América**, de las leyes que ordenen o instrumenten cualquier tipo de proceso electoral o Votación y de los reglamentos electorales que, por virtud de ley, sean aprobados por la Comisión y los acuerdos unánimes de los Comisionados Electorales. (Énfasis suplido). Art. 3.8(1), Código Electoral.

Asimismo, presentará a la consideración y aprobación de la Comisión "todos los proyectos o borradores de las reglas, los reglamentos y los planes de naturaleza específicamente electoral que fueran necesarios para cumplir con esta Ley". Art. 3.8(17), Código Electoral. **Además, podrá realizar "todos aquellos otros actos necesarios y convenientes para el cumplimiento de esta Ley".** (Énfasis suplido). Art. 3.8(18), Código Electoral.

Por su parte, el Artículo 5.1 enumera los derechos y prerrogativas de los electores. En detalle, consigna lo siguiente:

Reafirmando el derecho fundamental al voto universal, igual, directo, secreto y protegido contra toda coacción y la garantía de la más clara expresión e intención de la voluntad democrática del pueblo, también reconocemos los siguientes derechos y prerrogativas de los Electores:

(1) El derecho a la libre emisión del voto y **a que este se cuente y se adjudique conforme a la intención del Elector al emitirlo,** y según se dispone en esta Ley.

(2) **La supremacía de los derechos electorales individuales del ciudadano sobre los derechos y las prerrogativas de todos los Partidos,** Candidatos Independientes y agrupaciones políticas.

(3) La administración de los organismos electorales de Puerto Rico dentro de un marco de estricta imparcialidad, uniformidad, pureza, transparencia y **justicia.**

(4) **La más amplia accesibilidad del Elector, sin barreras y sin condiciones procesales onerosas, a toda transacción y servicio electoral, incluyendo el ejercicio de su derecho al voto**.

(5) El derecho del Elector a que el sistema y los procedimientos electorales estén fundamentados en su **más amplia participación y accesibilidad,** tomando en consideración su dignidad y su credibilidad personal, y no en la desconfianza de los Partidos Políticos u otros electores.

.    .    .    .    .    .    .    .

(9) El derecho del Elector a participar y votar hasta resolver de manera final y concluyente el estatus jurídico-político de Puerto Rico. (Énfasis suplido).

De igual forma, en su Artículo 5.6 establece como garantía del derecho al voto que

[n]o se podrá rechazar, cancelar, invalidar o anular el registro o la inscripción legal de un Elector; **o privar a un Elector calificado de su derecho al voto mediante reglamento, orden, resolución, interpretación o cualquier otra forma que impida lo anterior,** excepto que por virtud de la presente Ley o por Orden de un Tribunal con competencia para ello disponga lo contrario. (Énfasis suplido).

En lo que respecta al voto adelantado, el Código Electoral regula esta modalidad de sufragio en sus Artículos 9.37 al 9.39. En lo que nos concierne, el Artículo 9.37 enumera las categorías de electores con derecho al voto

adelantado. El inciso (3) de dicha disposición faculta a la Comisión para aumentar la lista de razones y categorías de electores elegibles para voto adelantado. El Artículo 9.39(3) dispone acerca de los votos adelantados por correo lo siguiente:

> (3) Votos adelantados para emitirse en papeletas impresas y correo: Este tipo de papeletas deberán ser enviadas al Elector a través del US Postal Service o transmitidas a su correo electrónico. En este caso, el Elector deberá devolver a la Comisión sus papeletas votadas a través del US Postal Service, con matasellos postal fechado no más tarde del día de la votación o Elección General. **Solamente se considerarán para contabilización aquellos votos adelantados <u>válidamente emitidos</u> que sean recibidos en la Comisión por correo, en o antes del último día del escrutinio general del evento electoral. La validación de este tipo de Voto Adelantado también estará sujeta a que el Elector haya incluido la copia de su tarjeta de identificación electoral o cualquier otra identificación con foto y vigente autorizada por esta Ley.** Se prohíbe que se requiera la notarización o testigos para poder ejercer el derecho al voto a través de Voto Adelantado. (Énfasis suplido).

Todo lo dispuesto anteriormente, a su vez, no limita que las decisiones tomadas por la Comisión estén sujetas a revisión judicial, según lo dispone el Artículo 13.1. Su inciso (1)(a) le confiere legitimación activa a nivel judicial a los Comisionados Electorales para intervenir en cualquier asunto de naturaleza específicamente electoral "que **esté o haya estado** bajo la jurisdicción de la Comisión". (Énfasis suplido). Acerca de la obligación de la Rama Judicial, el inciso (2) del referido artículo detalla lo siguiente:

(2) Obligación de la Rama Judicial

(a) En todo recurso legal, asunto, caso o controversia que se presente en un Tribunal de Justicia, este deberá dar prioridad a la **deferencia que debe demostrar a las decisiones tomadas por la Comisión a nivel administrativo, siendo esta la institución pública con mayor experti[s]e en asuntos electorales y la responsable legal de implementar los procesos que garanticen el derecho fundamental de los electores a ejercer su voto en asuntos de interés público.**

(b) **Ese derecho fundamental a votar del pueblo soberano en nuestro sistema democrático tiene supremacía sobre cualquier otro derecho o interés particular que pretenda impedirle votar**. Ningún recurso legal, asunto, caso o controversia bajo la jurisdicción interna de la Comisión; y **ningún proceso**, orden, sentencia o decisión judicial **podrán tener el efecto directo o indirecto de impedir, paralizar, interrumpir o posponer la realización de una votación según legislada** y según el horario y día específicos dispuestos por ley; a menos que el Tribunal Supremo de Puerto Rico determine la violación de algún derecho civil que, con excepción de una Elección General, posponga la votación o la clasifique como inconstitucional. (Énfasis suplido).

Por su parte, el Artículo 13.2 provee para la revisión judicial de decisiones adversas ante el Tribunal de Primera Instancia. En su parte pertinente dispone que:

Con excepción de otra cosa dispuesta en esta Ley:

(1) Cualquier Comisionado Electoral o parte adversamente afectada por una decisión, resolución, determinación u orden de la Comisión o la Comisión Local podrá, dentro de los diez (10) días siguientes a la

notificación de esta, recurrir al Tribunal de Primera Instancia con la presentación de un recurso legal de revisión.

.   .   .   .   .   .   .   .

(2) **Dentro de los treinta (30) días anteriores a una votación el término para presentar el recurso legal de revisión será de cuarenta y ocho (48) horas.** La parte promovente tendrá la responsabilidad de notificar dentro de dicho término copia del escrito de revisión a la Comisión y a cualquier otra parte afectada. El Tribunal de Primera Instancia deberá resolver dicha revisión dentro de un término no mayor de cinco (5) días, contados a partir de la presentación del caso. En estos casos, no habrá derecho a reconsideración. (Énfasis suplido).

Del mismo modo, se reconoce en el Artículo 13.3(4) la potestad discrecional de este Tribunal para certificar intrajurisdiccionalmente —*motu proprio* o a solicitud de parte— asuntos electorales noveles o de alto interés público pendientes ante el Tribunal de Primera Instancia o el Tribunal de Apelaciones.

Por último, el Artículo 14.3 faculta a la Comisión a revisar y adoptar todas las reglas y los reglamentos electorales necesarios para la implementación del Código Electoral.

**D. *Reglamento de voto ausente y voto adelantado de Primarias 2020 y Elecciones Generales y Plebiscito 2020***

El Reglamento de voto adelantado fue adoptado por la CEE conforme al Artículo 3.2 del Código Electoral. Sección 1.1, Reglamento de voto adelantado. Establece como su declaración de propósito "hacer **viable, <u>bajo las garantías</u>**

**constitucionales aplicables**, **el derecho al sufragio universal de aquellos electores con derecho a votar en determinada elección que no pueden estar en sus colegios electorales en la fecha de la celebración de estas** […]". (Énfasis suplido). Sección 1.2, Reglamento de voto adelantado. Este reglamento, en su Sección 1.3(24) define el voto adelantado de manera idéntica al Código Electoral.

De entrada, la Sección 2.3 detalla que bajo supervisión de la JAVAA se crearon tres (3) subjuntas, también con Balance Institucional, entre estas, la "JAVAA Votación Adelantada por correo". Indica el inciso B(1) que la JAVAA, entre otras funciones, "[p]reparará y actualizará el Reglamento de Voto Ausente y Voto Adelantado, **los manuales de procedimientos** y los formularios que se utilizarán en los procesos, **según el Código Electoral y los someterá a la consideración de la Comisión para su aprobación**". (Énfasis suplido).

Particularmente pertinente a la controversia de autos, la Sección 6.1 del Reglamento de voto adelantado —distinto al Artículo 9.37 del Código Electoral—, añade a la categoría de electores con derecho al voto adelantado a los electores con sesenta (60) años o más, según acordado unánimemente por los Comisionados Electorales y consta en la *Certificación de Acuerdo-Desacuerdo*, CEE-AC-20-248.

Por su parte, la Sección 6.8 del Reglamento de voto adelantado establece el procedimiento para la emisión de

las papeletas de voto adelantado por correo.  En detalle

dispone que:

> Las subjuntas de voto adelantado por correo inicialarán al dorso todas aquellas papeletas que remitirán a los electores.  Las papeletas serán remitidas por correo certificado a la dirección de cada elector cuya solicitud fue aprobada.
>
> Junto a las papeletas de votación se enviará:
>
> 1. Un sobre donde el elector colocará las papeletas votadas que será identificado como Sobre 1, en el cual se anotará el precinto al que pertenece el elector.
>
> 2. Un sobre más grande identificado como Sobre 2, para que el elector deposite en éste el Sobre 1, con las papeletas.  En este Sobre 2, se anotará el número del precinto o número del registro que tiene la solicitud del elector y contendrá impreso sobre su faz el juramento que el elector deberá prestar al momento de votar.
>
> 3. Un tercer sobre de mayor tamaño identificado como Sobre 3, pre dirigido a la JAVAA, dentro del cual el elector hará el envío del Sobre 2, por correo a la Comisión.  El sobre deberá llevar impresa en su faz la dirección postal de la JAVAA y unas líneas en blanco para la anotación del remitente.
>
> 4. Las instrucciones correspondientes a esta Sección y cualesquiera otras que sean necesarias tales como: Advertencia al Elector que debe incluir en el Sobre número 2 copia de la tarjeta de identificación electoral o cualquier otra identificación con foto vigente según establece el Código Electoral.

A su vez, el recibo de papeletas de voto adelantado por

correo —previo a que se incorporara el lenguaje aquí en

controversia al Manual de voto adelantado— se realizaría únicamente tomando en consideración la Sección 6.9 que dispone lo siguiente:

> **Solamente para la elección se considerarán válidamente emitidos aquellos votos que sean enviados en o antes de una elección y recibidos en o antes del último día del escrutinio general para esa elección. La validación de este tipo de voto adelantado por correo también estará sujeta a que el elector haya incluido la copia de su tarjeta de identificación electoral o cualquier otra identificación con foto y vigente autorizada por el Código Electoral.**

> La Comisión tendrá un apartado de correo (PO Box 192359) con el fin de recibir en forma exclusiva el material electoral destinado a la JAVAA. Se utilizará el matasello del sobre para validar la fecha de envío de las papeletas.

> Será obligación de las juntas de la JAVAA acusar recibo de toda papeleta de votación que le sea entregada[,] marcar como recibida en el sistema electrónico, así como mantener una contabilidad del material de votación recibido.

De otro lado, la Sección 6.10 contiene el proceso de verificación de identidad y depósito de sobre con papeletas en las urnas de voto adelantado por correo. Al respecto, especifica lo siguiente:

> Según se reciban los sobres con las papeletas conforme a los términos establecidos, se procederá a verificar la identidad de cada elector que haya emitido su voto adelantado por correo. Tal verificación se hará mediante la comparación de la firma otorgada por el votante con la firma en la solicitud.

> Cuando se determine que se trata de la misma persona, se procederá a depositar el Sobre 1 en la urna correspondiente al precinto. En aquellos casos en los cuales las juntas de mesa tengan motivos fundados para creer que existe irregularidad, lo harán así

> constar y remitirán el expediente a las
> Gerentes de la JAVAA. (Énfasis suplido).

## E. Hermenéutica legal

Como parte del cumplimiento con nuestro mandato Constitucional, debemos interpretar las leyes que aprueba la Rama Legislativa, así como los reglamentos y disposiciones que surjan posteriormente de estos, constatando que no estén reñidas con nuestra Carta Magna. Art. V, Sec. 4, Const. PR, LPRA, Tomo 1; San Gerónimo Caribe Project v. Registradora, 189 DPR 849, 867 (2013). Para ello, en nuestro ordenamiento jurídico se han establecido unas normas de hermenéutica legal, las cuales -en mayor o menor grado- se imponen como principios rectores del ejercicio de nuestra función adjudicativa. Rosado Molina v. ELA y otros, 195 DPR 81, 589 (2016); San Gerónimo Caribe Project v. Registradora, supra, pág. 868; Const. José Carro v. Mun. Dorado, 186 DPR 113, 126 (2012). Mediante este proceso de interpretación, se busca conocer, precisar y determinar la voluntad legislativa. San Gerónimo Caribe Project v. Registradora, supra, pág. 868; IFCO Recycling v. Aut. Desp. Sólidos, 184 DPR 712, 738 (2012); R.E. Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes en Puerto Rico, 2da ed. rev., San Juan, Pubs. JTS, 1987, Vol. 1, pág. 241.

Como primer acercamiento, debemos "remitirnos al propio texto de la ley, puesto que cuando el legislador se ha expresado en un lenguaje claro e inequívoco, […] es la

expresión por excelencia de la intención legislativa". Cordero *et al*. v. ARPe *et al*., 187 DPR 445, 456 (2012) (citado en Rosado Molina v. ELA y otros, *supra*, pág. 589); Art. 14 del Código Civil de Puerto Rico, 31 LPRA sec. 14. En reiteradas ocasiones hemos enfatizado que "el tribunal no está autorizado a adicionar limitaciones o restricciones que no aparecen en el texto de la ley, ni a suplir omisiones al interpretarla con el pretexto de buscar la intención legislativa". Rosado Molina v. ELA y otros, *supra*, págs. 589-590; Román v. Superintendente de la Policía, 93 DPR 685, 690 (1966); Meléndez v. Tribunal Superior, 90 DPR 656, 662 (1964).

Sin embargo, con respecto a lo anterior, debemos hacer eco a las expresiones del Prof. Jorge M. Farinacci Fernós, quien ilustra que "la claridad textual no implica, necesariamente, efectos normativos inequívocos". J.M. Farinacci Fernós, *Hermenéutica puertorriqueña: Cánones de interpretación jurídica*, 1ra ed., San Juan, Editorial InterJuris, 2019, pág. 72. En ocasiones, aun cuando el contenido comunicativo de la ley es claro, podría resultar insuficiente al confrontarse con la contribución o efecto normativo. Íd., págs. 72-78. No se trata de interpretar el texto, sino de construirlo a tenor con la norma que se pretende poner en vigor. Íd., pág. 73.

Determinado que el texto de la disposición legal no es claro, ya sea en su aspecto comunicativo o normativo, procede que se le dé "la interpretación que mejor responda

a los propósitos que persigue". San Gerónimo Caribe Project v. Registradora, *supra*, pág. 869. Esto, como sabemos, es muy distinto a sustituir la intención legislativa por la del juzgador. San Gerónimo Caribe Project v. Registradora, *supra*, pág. 869.

Al interpretarse el texto de una disposición legal, deberá efectuarse de manera conjunta con todas las demás que emanen del mismo cuerpo, sea porque estén comprendidas en éste o porque nazcan y se desprendan de él. Véase Rosado Molina v. ELA y otros, *supra*, págs. 589-590; Const. José Carro v. Mun. Dorado, *supra*, pág. 127; Asoc. Fcias. v. Caribe Specialty *et al.* II, 179 DPR 923, 939-940 (2010). Igualmente, debemos armonizar, en la medida posible, todas las disposiciones pertinentes, en aras de obtener un resultado sensato, lógico y razonable. Rosado Molina v. ELA, *supra*. Asimismo, debemos examinar e interpretar las disposiciones legales de modo que no conduzcan a resultados irrazonables o insostenibles, ni a conclusiones absurdas. San Gerónimo Caribe Project v. Registradora, *supra*, págs. 869-870; Asoc. Fcias. v. Caribe Specialty *et al.* II, *supra*, pág. 940; Domínguez Castro v. ELA II, 178 DPR 375, 409 (2010); Sucn. Álvarez Crespo v. Srio. de Justicia, 150 DPR 252, 276 (2000). A tono con lo anterior, este Foro ha reconocido la facultad de los tribunales para, como parte de su ejercicio de interpretación, suplir deficiencias en la ley ante ciertas instancias:

> [l]os tribunales [están] autorizados a
> interpretar las leyes cuando, entre otras,

> estas no son claras o concluyentes sobre un punto en particular; cuando el objetivo, al realizarlo, es el de suplir una laguna en la misma; o cuando, con el propósito de mitigar los efectos adversos de la aplicación de una ley a una situación en particular, la justicia así lo requiere [...]" (Bastardillas omitidas). San Gerónimo Caribe Project v. Registradora, *supra*, págs. 869-870 (citando a Consejo de Titulares v. Gómez Estremera *et al.*, 184 DPR 407, 428-429 (2012)). Véase además: Pueblo v. Ortega Santiago, 125 DPR 203, 214 (1990).[17]

### III. Análisis

La presente controversia de índole electoral surge a poco más de una semana del día señalado para la celebración de la Elección General y en pleno proceso del ejercicio de miles de personas que tienen la necesidad de votar adelantado, máxime en tiempos de una pandemia, acorde con el Artículo VI (1) del Manual de voto adelantado impugnado, ya comenzado el 26 de octubre de 2020 el escrutinio de los votos adelantados por correo. Ante tal panorama novel y de gran interés público, es imperativo ejercitar nuestra facultad para traer de inmediato ante nuestra consideración el presente caso y dilucidar en estricto derecho la validez de la *Resolución CEE-RS-20-164.* Lo hacemos, nuevamente, con el propósito de "imprimir certeza y legitimidad a los procesos democráticos" y permitir que todo voto válidamente emitido tenga la oportunidad de ser contado. Pierluisi-Urrutia *et al.* v. CEE *et al.*, *supra*, pág. 23. Véanse,

---

[17] Véase como ejemplo: Hernández Maldonado v. Taco Maker, 181 DPR 281 (2011); Figueroa Ferrer v. E.L.A., 107 DPR 250 (1978).

además: Senado de PR v. Gobierno de PR, *supra*; P.I.P. v. E.L.A. *et al.*, *supra*; Mundo Ríos v. CEE *et al.*, *supra*.

Como cuestión de umbral, corresponde despejar cualquier duda con respecto a la alegación que hiciera el Presidente de la CEE mediante una moción de desestimación en el foro primario, a la cual se unió el Comisionado Electoral del PNP, sobre que la controversia de autos se tornó académica. Planteó, en síntesis, que con la aprobación final del Manual de voto adelantado, acorde con la *Certificación de Desacuerdo-Resolución CEE-AC-20-387*, cualquier controversia existente sobre el borrador del Manual se había tornado académica. Una mirada superficial a la referida certificación constata que el Manual de voto adelantado fue aprobado, según enmendado, entre otras, por la *Resolución CEE-RS-20-164*. La validez misma de esta última resolución emitida por el Presidente de la CEE fue impugnada oportunamente y, precisamente, es el asunto que hoy nos ocupa. La posterior aprobación del Manual de voto adelantado utilizando como base una resolución que todavía no es final y firme, no confirió certeza jurídica a éste y, por ende, mantuvo vivo y justiciable el presente caso-controversia. U.P.R. v. Laborde Torres y otros I, *supra*, pág. 280; Noriega v. Hernández Colón, 135 DPR 406 (1994); E.L.A. v. Aguayo, 80 DPR 552, 554 (1958).

Con respecto a los méritos de la controversia de estricto derecho que tenemos ante nosotros, concretamente debemos resolver si el Presidente de la CEE actuó correctamente al

acoger el texto propuesto por uno de los comisionados electorales para llenar una laguna tanto en el Código Electoral como en el Reglamento de voto adelantado, y ante la falta de unanimidad en la votación de los comisionados electorales, resolver el desacuerdo adoptando la inclusión del artículo cuestionado al borrador del Manual de voto adelantado con unas variaciones.

Específicamente, la controversia surge porque el Artículo 9.39(3) del Código Electoral y la Sección 6.9 del Reglamento de voto adelantado, de manera similar, disponen que la validación del voto adelantado por correo también estará sujeta a que el elector haya incluido la copia de su tarjeta de identificación electoral o cualquier otra vigente autorizada por el Código Electoral. Ante el vacío existente en ambas disposiciones con respecto al proceso a seguir por parte de aquellos electores que omitieran incluir copia de su identificación para garantizar su debido proceso de ley y ser adecuadamente notificados, el Comisionado Electoral del PNP presentó una moción para que el borrador del Manual incluyera una disposición que ordenara a la JAVAA notificar dentro del término de 24 horas de haber recibido las papeletas a los electores que no incluyeron la copia de su identificación, tal deficiencia. Esta propuesta inicial le proveía a los electores para subsanar la omisión hasta el 25 de noviembre de 2020, con la advertencia de que, de no hacerlo, "su voto no podrá ser adjudicado, tal como dispone

el Código Electoral 2020". Además, especificaba los medios disponibles para subsanar la deficiencia.

El Comisionado del PNP votó a favor y, a grandes rasgos, expresó que existía confusión sobre el proceso del voto por correo; que se le debía dar oportunidad para subsanar a la población de sesenta (60) años o más que son los que han solicitado el voto adelantado por correo; y que si no se le adjudica el voto al elector sin la debida notificación "se le esta[ría] coartando su derecho al voto y el debido proceso de ley". Los Comisionados Electorales del PPD, PIP, MVC y PD votaron en contra, unos por entender que el texto del Artículo 9.39(3) era claro en que si no se incluía la copia de la identificación no se adjudicaría el voto, otros mostraron recelo con los términos para la notificación de la deficiencia y la subsiguiente subsanación.

Ante la falta de unanimidad, el Presidente de la CEE resolvió el desacuerdo mediante la *Resolución CEE-RS-20-164* aquí impugnada.

Del derecho previamente citado podemos constatar que tanto el Artículo 9.39(3) del Código Electoral como la Sección 6.9 del Reglamento de voto adelantado, a pesar de ser claros con respecto a condicionar la validez del voto adelantado por correo al recibo de la copia de la identificación, los efectos normativos que tendría adoptar esta interpretación literal y absolutista, colisionarían frontalmente con los citados postulados constitucionales y estatutarios que otorgan supremacía al ejercicio accesible

y sin barreras del derecho al voto y su adjudicación conforme a la voluntad del elector, sobre cualquier condición procesal onerosa que pudiera frustrar el valor del voto emitido. Véase P.P.D. v. Admor. Gen. de Elecciones, *supra*, pág. 207; Art. 5.1, Código Electoral; Farinacci Fernós, *op. cit.*

Precisamente esto, además de los peligros provocados por la pandemia del COVID-19, motivaron la actuación del Presidente de la CEE. Ahora bien, ni el Código Electoral ni el Reglamento de voto adelantado disponen expresamente cómo se soluciona un desacuerdo en cuanto a la inclusión de apartados a un borrador de manual ni sobre controversias respecto a su aprobación. Adviértase que al momento de emitirse la *Resolución CEE-RS-20-164* impugnada, el Manual de voto adelantado no había sido aprobado, por lo que no nos encontramos ante una enmienda reglamentaria propiamente.

No obstante, del Artículo 3.4 del Código Electoral debemos precisar si la forma en que se incorporó la disposición al borrador del Manual está avalada por el estatuto. En su inciso (1), dicho artículo establece que las decisiones de la Comisión sobre asuntos de naturaleza electoral específica se tomarán por unanimidad de los Comisionados Electorales Presentes. De los incisos (2) y (4) denotamos que en ausencia de unanimidad el Presidente podrá resolver el asunto a favor o en contra, y los que estén en desacuerdo podrán solicitar revisión judicial sobre dicha decisión. Ahora bien, cuando el asunto verse sobre

una enmienda al reglamento para una votación y su escrutinio general, salvo cuestiones internas de los partidos políticos, el inciso (5) requiere que el voto de los Comisionados Electorales sea unánime, y prescribe que en ausencia de unanimidad no se aprobará la enmienda propuesta ni podrá ser votada o resuelta por el Presidente. Lo mismo dispone el inciso (6) con respecto a la inclusión de otras categorías de voto adelantado. Sin embargo, el inciso (6)(a) faculta al Presidente a añadir otras categorías de voto adelantado, en ausencia de unanimidad y estando vigente una declaración oficial de emergencia del Gobierno federal o local, con el fin de "garantizar el derecho fundamental al voto de los Electores que, por razón de dicha emergencia, enfrenten la imposibilidad o dificultad para asistir a sus Centros de Votación".

Al resolver esta controversia, debemos interpretar el Código Electoral de manera que no esté reñido con el derecho al voto que está llamado a salvaguardar, en aras de obtener un resultado sensato, lógico y razonable. Por consiguiente, decretamos que la *Resolución CEE-RS-20-164* es válida. Ante el estado de emergencia existente, miles de electores han optado por ejercer su voto de manera adelantada por correo. De la misma forma que el Código Electoral permite la creación de categorías de voto adelantado en situaciones de emergencia y ante la falta de unanimidad, igualmente facilita que por las mismas razones se permita garantizar el ejercicio efectivo y constitucional de las categorías ya

existentes. Más aún, tenemos que considerar que las facultades y deberes del Presidente de la CEE no son taxativas y más allá de estar sujetas al estricto lenguaje de una ley habilitadora o su reglamentación, sus actuaciones tienen implicaciones constitucionales, por ser el máximo funcionario con autoridad ejecutiva y administrativa a cargo de viabilizar la voluntad del Pueblo soberano por medio del ejercicio y adjudicación del voto de los electores.

La decisión del Presidente de la CEE le da al elector que votó por correo el sitial que tienen todos los demás, sin trabas procesales, como sería sujetar la validez de un voto emitido al requisito de forma de incluir una fotocopia de una identificación en el sobre original, sin permitirle subsanar la omisión. No le restamos a la identificación su importancia para garantizar la pureza de los procedimientos, ni descartamos el requisito que la ley impone,[18] pero su omisión **no puede representar la anulación del voto, sin la debida notificación, oportunidad de subsanar la deficiencia y de solicitar revisión sobre esa determinación, para que el elector haga cualquier otro planteamiento en derecho que**

---

[18] Cabe señalar que acorde con nuestro Código Electoral, la identidad del elector se verificará mediante un examen de sus circunstancias personales contenidas en el listado de electores, y la presentación de la tarjeta electoral, así como identificación con foto vigente, entre las cuales menciona cualquiera expedida conforme al Real ID Act of 2005, el pasaporte estadounidense, el U.S. Global Entry, las Tarjetas de Identificación de las Fuerzas Armadas estadounidenses y de la Marina Mercante de Estados Unidos, así como la licencia de conducir expedida por el Departamento de Transportación y Obras Públicas de Puerto Rico (DTOP). Arts. 9.26(1) y 5.13(1), Código Electoral. Aquel elector que no presente una identificación válida, votará en el Colegio de "añadidos a mano". Art. 9.26(1), Código Electoral.

**estime pertinente.** Lo que se busca con la *Resolución CEE-RS-20-164* es permitir que el elector subsane la falta de identificación. Esto ocurrirá sin que se abra el sobre sellado que contiene las papeletas. Se garantiza así la secretividad del voto, dado que la JAVAA se percatará de la omisión al abrir el sobre remitido y hallar sólo el sobre con las papeletas sin la copia de la identificación que debía acompañarlo. Una vez subsanada la falta de identificación del elector en un plazo corto y razonable, procederá el depósito del sobre que contiene la votación a la urna del precinto correspondiente. Lo anterior es cónsono con los propósitos constitucionales que permean la normativa electoral tanto local como federal que colocan al derecho al sufragio en un sitial elevado —pilar de nuestra democracia— y con los postulados del debido procedimiento de ley, pues el elector tendrá derecho a un proceso justo, con derecho a una adecuada notificación y oportunidad de ser escuchado y defenderse.

## IV. Conclusión

A base de lo anterior, expedimos el recurso de certificación presentado y decretamos la validez de la *Resolución CEE-RS-20-164* emitida por el Presidente de la Comisión Estatal de Elecciones el 19 de octubre de 2020.

Se dictará Sentencia de conformidad.

ROBERTO FELIBERTI CINTRÓN
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Nicolás Gautier Vega, en su capacidad de Comisionado Electoral del Partido Popular Democrático<br><br>Recurrido<br><br>v.<br><br>Comisión Estatal de Elecciones; Francisco Rosado Colomer, en su capacidad de Presidente de la CEE; Roberto I. Aponte Berríos, en su capacidad de Comisionado Electoral del Partido Independentista Puertorriqueño; Olvin Valentín Rivera, en su capacidad de Comisionado Electoral del Movimiento Victoria Ciudadana; y Edwardo García Rexach, en su capacidad de Comisionado Electoral del Proyecto Dignidad<br><br>Partes con Interés<br><br>Héctor Joaquín Sánchez Álvarez, en su capacidad de Comisionado Electoral del Partido Nuevo Progresista<br><br>Parte Peticionaria en Certificación | CT-2020-22 |

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de octubre de 2020.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, expedimos el recurso de certificación presentado y decretamos la validez de la *Resolución CEE-RS-20-164* emitida por el Presidente de la Comisión Estatal de Elecciones el 19 de octubre de 2020.

**Notifíquese de inmediato por teléfono y correo electrónico.**

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. El Juez Asociado señor Martínez Torres emitió una Opinión de Conformidad. El Juez Asociado señor Estrella Martínez emitió una Opinión de Conformidad a la que se unieron la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Rivera García. La Jueza Presidenta Oronoz Rodríguez emitió una Opinión Disidente a la que se une la Juez Asociada señora Rodríguez Rodríguez. El Juez Asociado señor Colón Pérez emitió una Opinión Disidente a la que se une la Juez Asociada señora Rodríguez Rodríguez.

María I. Colón Falcón
Secretaria del Tribunal Supremo Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Nicolás Gautier Vega, en su capacidad de Comisionado Electoral de Partido Popular Democrático<br><br>Recurrido<br><br>v.<br><br>Comisión Estatal de Elecciones; Francisco Rosado Colomer, en su capacidad de Presidente de la CEE; Roberto I. Aponte Berríos, en su capacidad de Comisionado Electoral del Partido Independentista Puertorriqueño; Olvin Valentín Rivera, en su capacidad de Comisionado Electoral del Movimiento Victoria Ciudadana; y Edwardo García Rexach, en su capacidad de Comisionado Electoral del Proyecto Dignidad<br><br>Partes con Interés<br><br>Héctor Joaquín Sánchez Álvarez, en su capacidad de Comisionado Electoral del Partido Nuevo Progresista<br><br>Parte Peticionaria en certificación | CT-2020-0022 |

Opinión de Conformidad emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 28 de octubre de 2020.

La interpretación que hace hoy este Tribunal se apega al texto del Código Electoral y se abstiene de exigir requisitos adicionales que no están en el estatuto y que constituirían obstáculos al ejercicio del sufragio por

los electores que decidieron votar por correo para disminuir el riesgo de contagiarse con el coronavirus.

El Art. 9.39(3) del Código Electoral de Puerto Rico de 2020, Ley Núm. 58-2020, requiere que el elector que vote por correo incluya en el sobre -que a su vez contiene el sobre sellado con las papeletas- una copia de una identificación personal válida. En cambio, el Código Electoral no dice qué hacer si el elector olvida echar esa copia en el sobre. En esos casos, la ley no impide a la Comisión Estatal de Elecciones (CEE) darle una oportunidad al elector para corregir su error, sin comprometer la secretividad de su voto. Si eso se puede hacer, es lo procedente para cumplir con el mandato legal de proteger el derecho de cada elector a emitir su voto. Eso no es una enmienda a un reglamento, sino la implementación de este y de la ley a través del manual de instrucciones operacionales.

La interpretación contraria que propone el Comisionado Electoral del Partido Popular Democrático y que acogen las opiniones disidentes va en contra del texto de la ley y deja desprovisto al elector, por omitir un trámite subsanable con facilidad. Un burócrata sin conciencia abrazaría esa interpretación. En cambio, una interpretación textualista e integrada del Código Electoral nos lleva a reconocer la facultad de la CEE para tomar medidas para salvaguardar el voto de los electores.

Nuestro deber es apegarnos al texto de la ley, sin añadirle requisitos que esta no tiene. Art. 14 del Código

Civil de Puerto Rico, 31 LPRA sec. 14. En reiteradas ocasiones hemos enfatizado que "el tribunal no está autorizado a adicionar limitaciones o restricciones que no aparecen en el texto de la ley, ni a suplir omisiones al interpretarla con el pretexto de buscar la intención legislativa". Rosado Molina v. ELA, 195 DPR 581, 589-590 (2016). Lo que tenemos que hacer es una lectura integrada del Código Electoral y no una lectura aislada, carente de contexto, del Art. 9.39(3), supra. No podemos adoptar una interpretación del texto que choque con los derechos constitucionales del elector y con otras disposiciones del Código Electoral que obligan a la CEE a salvaguardar el derecho del elector a emitir su voto, sin cortapisas adicionales. Véase el Art. 5.1 del Código Electoral, sobre los derechos y prerrogativas de los electores. Tampoco podemos adoptar una interpretación de la ley que anula el voto de un elector sin darle la oportunidad adecuada para que pueda subsanar cualquier omisión de forma en el envío de las papeletas, especialmente ante la confusión que la adopción por primera vez de este mecanismo puede causar.

El Art. 9.39(3), supra, no impide que la CEE cree un mecanismo para concederle al elector una oportunidad razonable para cumplir con los requisitos que la ley exige para que su voto por correo se cuente. Todo lo contrario. El Art. 5.15 del Código Electoral Código Electoral requiere que la CEE establezca "procedimientos para **subsanar** o corregir, de la manera más expedita y sencilla posible para

los electores, cualquier error, **omisión** o discrepancia que surja **en todo tipo de transacción electoral**". (Énfasis suplido).

El Comisionado Electoral del Partido Popular quiere que enmendemos el Código Electoral para hacer más difícil que la gente vote. Más aún, para los disidentes, poner en vigor el Art. 5.15 y proteger así la oportunidad de un elector para ejercer su voto, es un "atropello" que "facilita la posibilidad de manipular" votos de una forma misteriosa. Dejen de meter miedo, que todavía faltan tres días para que llegue Halloween. Nuestra labor como Tribunal no es sustituir el criterio legislativo ni añadir trabas al derecho al voto. Quien proponga lo contrario es quien, realmente, no respeta la democracia.

Como la Opinión de este Tribunal acoge esa interpretación textualista del Art. 9.39(3) del Código Electoral, supra, voto conforme.


                              RAFAEL L. MARTÍNEZ TORRES
                                    Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Nicolás Gautier Vega, en su capacidad de Comisionado Electoral del Partido Popular Democrático<br><br>    Recurrido<br><br>        v.<br><br>Comisión Estatal de Elecciones; Francisco Rosado Colomer, en su capacidad de Presidente de la CEE; Roberto I. Aponte Berríos, en su capacidad de Comisionado Electoral del Partido Independentista Puertorriqueño; Olvin Valentín Rivera, en su capacidad de Comisionado Electoral del Movimiento Victoria Ciudadana; y Edwardo García Rexach, en su capacidad de Comisionado Electoral del Proyecto Dignidad<br><br>    Partes con Interés<br><br>Héctor Joaquín Sánchez Álvarez, en su capacidad de Comisionado Electoral del Partido Nuevo Progresista<br><br>Parte    Peticionaria    en Certificación | CT-2020-22 |

Opinión de conformidad emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ a la cual se une la Jueza Asociada señora PABÓN CHARNECO y el Juez Asociado Señor RIVERA GARCÍA

San Juan, Puerto Rico, a 28 de octubre de 2020.

Como garantes del derecho al sufragio, hoy debemos ejercer nuestro deber de certificar un asunto de alto interés público en aras de proveer un remedio oportuno, justo y adecuado. En ese sentido, la controversia ante

nuestra consideración exige que descartemos **la peligrosa y antidemocrática** propuesta en la que se pretendía vetar automáticamente el derecho al voto de miles de electores y electoras que ejercieron su voto adelantado, sin que éstos cuenten con un mecanismo real y efectivo que les permita impugnar esa privación de uno de los derechos fundamentales de nuestros ciudadanos y ciudadanas. En reconocimiento de que nuestro ordenamiento constitucional y estatutario exigen el mayor acceso al derecho al voto y de que el mismo no se limite sin un debido proceso de ley, estoy conforme con la Opinión mayoritaria que hoy emite este Tribunal.

## I.

Como es conocido, la Ley de la Judicatura, Ley Núm. 201-2003, 24 LPRA sec. 24 et seq., provee en su Art. 3.002 (f) que este Tribunal puede, mediante el recurso de certificación, traer inmediatamente ante sí cualquier asunto pendiente ante el Tribunal de Primera Instancia cuando se planteen "cuestiones noveles de derecho, o . . . de alto interés público". 24 LPRA sec. 24s (f). Véase, Regla 52.2 (d) de Procedimiento Civil, 32 LPRA Ap. V. Cónsono con ello, el Art. 13.3 del Código Electoral de Puerto Rico de 2020, Ley Núm. 58-2020, http://www.bvirtual.ogp.pr.gov/ogp/Bvirtual/leyesreferencia/PDF/58-2020.pdf (Código Electoral), reconoce expresamente esta facultad del Tribunal Supremo en el contexto electoral.

A la luz de este marco estatutario, consecuentemente he favorecido la expedición de recursos de certificación en aras

de atender eficaz y oportunamente controversias electorales de alto interés público. Véase, Pedro Pierluisi-Urrutia, et al. v. Comisión Estatal de Elecciones, et al., 2020 TSPR 82 (Estrella Martínez, J., Opinión de conformidad); Com. PNP v. CEE, 196 DPR 651, 657-658 (2016) (Estrella Martínez, J., Voto particular de conformidad); PNP v. ELA, 196 DPR 42, 47 (2016) (Estrella Martínez, J., Voto particular disidente). Lo anterior, es necesario para proveer una administración justa, rápida y económica ante reclamos de nuestros ciudadanos y ciudadanas.

Precisamente, hoy nos encontramos nuevamente ante una controversia que "permea sobre el derecho de los ciudadanos y las ciudadanas a participar en nuestro sistema democrático y a expresarse libremente". PNP v. ELA, supra, pág. 29 (Estrella Martínez, J., Voto particular disidente). Según discutimos, hoy debemos resolver si las personas que ejercen su voto adelantado mediante correo postal pueden subsanar posteriormente algún error en la papeleta enviada. Habiendo comenzado formalmente el proceso de votación adelantado, no albergo duda de que nos encontramos ante una controversia de alto interés público que exige que actuemos con celeridad y efectividad.

Aclarado este asunto de umbral, procedemos a exponer el derecho aplicable a la controversia ante nuestra consideración.

## II.

## A.

La Constitución de Puerto Rico reconoce que el derecho al voto de nuestros ciudadanos y ciudadanas es un pilar democrático de la más alta supremacía. A esos fines, establece expresamente que "[l]as leyes garantizarán la expresión de la voluntad del pueblo mediante el **sufragio universal**, **igual**, **directo y secreto**, y protegerán al ciudadano contra toda coacción en el ejercicio de la prerrogativa electoral". (Énfasis suplido). Art. II, Sec. 2, Const. PR, LPRA, Tomo 1. En virtud de la inviolabilidad del derecho al sufragio, repetidamente hemos resuelto que el mismo constituye una garantía fundamental. P.I.P. v. C.E.E., 120 DPR 580, 615 (1988); Ortiz Angleró v. Barreto Pérez, 110 DPR 84, 88 (1980). Cónsono con ello, la Corte Suprema de los Estados Unidos ha dispuesto lo siguiente:

> The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government. And the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise. Reynolds v. Sims, 377 US 533, 555 (1994).

En aras de viabilizar este instrumento de expresión y participación ciudadana, el Código Electoral dispone que el elector y la electora son "el eje y protagonista del sistema electoral y debe[n] serlo sin limitaciones ni condiciones procesales que, irrazonablemente menoscaben, limiten o compliquen el ejercicio del voto". Código Electoral, supra,

Exposición de motivos. En ese sentido, el referido estatuto prohíbe expresamente que se prive a una persona de ejercer su derecho constitucional al sufragio **mediante obstáculos y limitaciones onerosas**. A esos fines, el Código Electoral provee que "**no se podrá . . . privar a un Elector [o Electora] calificad[a] de su derecho al voto mediante reglamento, orden, resolución o cualquier otra forma que impida lo anterior**". (Énfasis suplido). Íd., Art. 5.6. Como puede apreciarse, hay una intención legislativa inequívoca de garantizar "la más amplia accesibilidad del Elector [y de la Electora], sin barreras y sin condiciones procesales onerosas, a toda transacción y servicio electoral, incluyendo el ejercicio de su derecho al voto". Íd., Art. 5.1 (4).

Precisamente, en aras de salvaguardar el derecho al voto de todos nuestros ciudadanos y ciudadanas, el Código Electoral exige que la Comisión Estatal de Elecciones (CEE) "**reglament[e] la forma y los procedimientos para subsanar o corregir, de la manera más expedita y sencilla posible para los electores, cualquier error, omisión o discrepancia que surja en todo tipo de transacción electoral**". (Énfasis suplido). Íd., Art. 5.15. Por tanto, la Asamblea Legislativa plasmó un mandato que exige que los electores y las electoras tengan la oportunidad de subsanar algún error en el ejercicio de su derecho al voto. Lo anterior, tiene como propósito garantizar que cada voto "se cuente y se adjudique conforme a la intención del Elector [o la Electora] al emitirlo". Íd., Art. 5.1 (1).

**B.**

El Código Electoral provee una variedad de herramientas para salvaguardar el derecho al sufragio de quienes no tienen la capacidad de acudir a los eventos electorales físicamente, lo que ha ubicado a Puerto Rico en las corrientes de las jurisdicciones que fomentan el mayor acceso posible de los electores y las electoras para garantizar el ejercicio de su derecho al voto. Lo anterior, es particularmente necesario en estos momentos que vivimos bajo la amenaza de una pandemia. Entre estos mecanismos, se encuentra el voto adelantado por correo reconocido en los Arts. 9.37 y 9.39 del Código Electoral, supra. A esos fines, las personas que tengan alguna de las siguientes circunstancias tendrán derecho a votar mediante el procedimiento de voto adelantado: las personas que estarán en su centro de empleo el día del evento electoral, que se consideren cuidadoras únicas de una persona encamada, que se encuentren hospitalizadas, que sean candidatas a algún cargo público, que se encuentren fuera del País, que tengan sesenta (60) años de edad o más, entre otras circunstancias. Íd., Art. 9.37; Reglamento del voto ausente y voto adelantado de Primarias 2020 y Elecciones Generales y Plebiscito 2020, CEE, Sec. 9.1, 13 de marzo de 2020 (rev. 9 de septiembre de 2020).

Pertinente a la controversia ante nos, el Código Electoral provee el procedimiento a seguir para tramitar el voto adelantado por correo postal. Particularmente, el proceso comienza con el envío de la papeleta a las personas

electoras mediante el Servicio Postal de los Estados Unidos (USPS, por sus siglas en inglés). Íd., Art. 9.39 (3). El USPS deberá certificar que la persona recibió la papeleta. Una vez recibida, la persona electora devolverá la papeleta a la CEE en el sobre predirigido. El articulado contempla una cuestionable gestión adicional que ha sido objeto de múltiples controversias en otras jurisdicciones y que originó el caso ante nos, a saber: la inclusión de una copia de su identificación electoral o cualquier otra identificación con foto autorizada por el referido estatuto. Íd. Por último, las papeletas deben contar con un matasellos postal fechado no más tarde del día del evento electoral Íd.

Ahora bien, el Código Electoral reconoce expresamente que el voto adelantado se ejercerá "conforme a los procedimientos que esta **disponga por reglamento**". (Énfasis suplido). Íd., Art. 9.39 (1). Por tanto, hay una delegación expresa por parte de la Asamblea Legislativa a favor de la CEE para que ésta reglamente y abunde en el procedimiento para ejercer un voto adelantado. Claro está, en esa encomienda, la CEE debe actuar conforme a los principios inteligibles del Código Electoral. Domínguez Castro v. ELA, 178 DPR 1, 92-93 (2010).

A esos fines, la CEE elaboró y aprobó un Manual de Procedimiento para el Voto Adelantado por Correo para las Elecciones Generales y Plebiscito 2020 (Manual), CEE, 20 de octubre de 2020, para precisar las etapas del voto adelantado. Pertinente a la controversia ante nuestra

consideración, el Art. V (D) del Manual establece lo siguiente:

> **En caso de que el elector no haya incluido la copia de su identificación con foto vigente, la JAVAA deberá notificar al elector la deficiencia a la brevedad y no más tarde de veinticuatro horas de haber identificado la deficiencia,** como parte del proceso de apertura del sobre Número 2. La JAVAA deberá efectuar la notificación a través del número de teléfono, dirección de correo electrónico o dirección postal que fue provista por el elector en la solicitud de voto adelantado o que resulte de su registro electoral actualizado. En dicha notificación la JAVAA deberá apercibir al elector de que no proveer la copia de la identificación en o antes de tres (3) días laborables de la notificación de la deficiencia, su voto no será adjudicado. (Énfasis suplido).

Como puede apreciarse, el Manual establece que la CEE deberá notificar adecuadamente a la persona electora sobre la falta de la copia de su identificación, en lugar de descartar automáticamente sus votos. De esta manera, la CEE salvaguarda el debido proceso de ley de nuestros ciudadanos y ciudadanas para que éstas puedan ejercer las acciones oportunas dirigidas a que su ejercicio del derecho al voto no se vea frustrado.

Recordemos, pues, que "[c]uando se toma una determinación que incide sobre los escenarios en los que un elector emitirá su voto, **las nociones básicas del debido proceso de ley exigen que se notifique adecuadamente para que éste tenga la oportunidad de ser escuchado**". (Énfasis suplido). Com. PNP v. CEE III, 196 DPR 706, 717 (2016) (Sentencia). En ese sentido, la notificación adecuada es un componente medular de un debido proceso de ley, pues "brinda

a las partes la oportunidad de advenir en conocimiento real de la determinación tomada, a la vez que otorga a las personas cuyos derechos pudieran verse transgredidos una mayor oportunidad de determinar si ejercen o no los remedios que le han sido concedidos por ley". Asoc. Vec. Altamesa Este v. Mun. San Juan, 140 DPR 24, 34 (1996). Entiéndase, el debido proceso de ley exige que, previo a que se descarte el ejercicio de un derecho tan trascendental como el sufragio, se satisfagan garantías mínimas que hagan del proceso uno justo y adecuado.

Aclarado el derecho aplicable, procedemos a exponer los fundamentos de esta Opinión de Conformidad.

**III.**

Como expusimos anteriormente, la controversia ante nuestra consideración exige que determinemos si la CEE tiene el deber ministerial de garantizar el debido proceso de ley de los electores y de las electoras en los que medie una impugnación del ejercicio del derecho al voto o, si por el contrario, procede descartar automáticamente las papeletas que no estén acompañadas de la copia de una identificación, sin que el elector o electora afectada conozca de esa consecuencia jurídica.

Según adelantamos, el Código Electoral dispone que el eje central de nuestro andamiaje electoral es la persona electora. A esos fines, el propósito del referido estatuto recae en proteger, salvaguardar y viabilizar el derecho al sufragio. Para materializar este propósito, el Código

Electoral establece expresamente, en más de una ocasión, que el derecho al voto no puede ser coartado, limitado ni restringido. Véase, Código Electoral, supra, Arts. 5.1 (4), 5.6. En cumplimiento con ese mandato, la CEE diseñó un Manual que, precisamente, les concede a las personas electoras la oportunidad de conocer el fundamento por el cual se impugnó su voto, a fin de que éstas puedan defender la validez del mismo y tomar todas las acciones que estimen procedentes en derecho.

Ante este cuadro, concluyo que la CEE actuó correctamente y en conformidad a los poderes delegados por la Asamblea Legislativa. No sólo el Código Electoral es consecuente en que la CEE debe de garantizar la más amplia accesibilidad al ejercicio del derecho al voto, sino que igualmente le exige que **cree y elabore mecanismos que permitan que las personas electoras puedan subsanar o corregir cualquier error, omisión o discrepancia que surja en todo tipo de transacción electoral**. Íd., Art. 5.15. De igual modo, le delega expresamente la facultad de reglamentar el procedimiento y la tramitación del voto adelantado. Íd., Art. 9.39 (1). En consecuencia, el Art. V (D) del Manual aprobado por la CEE está dentro de las facultades y de los principios inteligibles delegados en el Código Electoral.

Asimismo, el procedimiento antes reseñado no sólo es beneficioso para la persona electora, sino que es **necesario** en virtud del debido proceso de ley que permea los asuntos electorales. Sabido es que el derecho de votar libremente por

el candidato o la candidata que la persona electora desee es esencial a toda sociedad democrática. Cualquier restricción de ese derecho ataca el corazón de los gobiernos representativos. P.P.D. v. Admor. Gen. de Elecciones, 111 DPR 199, 222 (1981). En ese sentido, "el debido proceso de ley impone que, para la negación de un derecho fundamental, el valor y suficiencia de la prueba sean medidos con criterios más rigurosos." Id., pág. 223. Ciertamente, esa rigurosidad y celo por el cumplimiento de las garantías constitucionales que enmarcan el adecuado ejercicio del derecho al voto, quedarían ignoradas con una interpretación que nos conduzca a ignorar la debida notificación que debe tener cualquier elector o electora en una eventual impugnación de su voto adelantado por correo.

El Art. V (D) del Manual cuenta con elementos indispensables del debido proceso de ley, tal como la notificación oportuna, que hacen del mismo uno justo y eficiente mientras que, a su vez, salvaguarda el derecho al voto de los ciudadanos y ciudadanas de Puerto Rico. En ese sentido, procede determinar que el Art. V (D) es válido y vinculante.[19] **Acoger lo propuesto por el recurrido Comisionado**

---

[19]Es menester destacar que esta Opinión de conformidad se limita a la controversia ante nuestra consideración, a saber la facultad de la CEE para instrumentar un mecanismo que cumpla con las garantías del debido proceso de ley, en caso de que pretenda impugnarse por algún funcionario o funcionaria electoral el ejercicio del derecho al voto por correo. Ante el hecho de que no hay un caso o controversia per sé en el cual se planteen posibles violaciones adicionales al derecho al voto, me abstengo a entrar en consideraciones más allá de los lineamientos expuestos. Lo

**Electoral del Partido Popular Democrático, avalado por la disidencia, conllevaría descartar automáticamente, sin más, todo voto adelantado objeto de esta controversia. No podría haber alternativa más antidemocrática que esa para resolver esta controversia. Sin duda alguna, ello constituiría una violación palpable al debido proceso de ley y es contrario a los postulados de la Constitución de Puerto Rico y del Código Electoral.**

### IV.

En consecuencia, a la luz de los fundamentos expuestos, estoy conforme con la Opinión mayoritaria.

Luis F. Estrella Martínez
Juez Asociado

---

anterior no es taxativo ni conlleva un análisis sustantivo sobre el derecho al voto y posibles impugnaciones al mismo, tales como la secretividad del voto e imposiciones de condiciones onerosas para el ejercicio del mismo. Como garantes del derecho al voto, atenderemos tales controversias, en su momento, cuando lleguen ante nuestra atención. Claro está, si no hubiésemos validado el mecanismo de notificación previa adoptado por la CEE, los electores y electoras se hubiesen visto privados de eventualmente poder realizar cualquier defensa o planteamiento adicional de su derecho al voto porque tan siquiera se hubiesen enterado de que el mismo fue vetado de antemano.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Nicolás Gautier Vega, en su capacidad de Comisionado Electoral del Partido Popular Democrático<br><br>Recurrido<br><br>v.<br><br>Comisión Estatal de Elecciones; Francisco Rosado Colomer, en su capacidad de Presidente de la CEE; Roberto I. Aponte Berríos, en su capacidad de Comisionado Electoral del Partido Independentista Puertorriqueño; Olvin Valentín Rivera, en su capacidad de Comisionado Electoral del Movimiento Victoria Ciudadana; y Edwardo García Rexach, en su capacidad de Comisionado Electoral del Proyecto Dignidad<br><br>Partes con Interés<br><br>Héctor Joaquín Sánchez Álvarez, en su capacidad de Comisionado Electoral del Partido Nuevo Progresista<br><br>Parte Peticionaria en Certificación | CT-2020-22 | |

Opinión disidente que emitió la Jueza Presidenta Oronoz Rodríguez a la que se une la Juez Asociada señora Rodríguez Rodríguez

En San Juan, Puerto Rico, a 28 de octubre de 2020.

A cinco días de las elecciones generales en Puerto Rico, la Comisión Estatal de Elecciones cambió las reglas del juego

y eliminó garantías específicas que el legislador incorporó expresamente en el Código Electoral del 2020 para salvaguardar la transparencia y la confiabilidad del voto adelantado por correo. Una mayoría de este Tribunal, en vez de velar por la pureza y la confiabilidad del resultado de las elecciones, refrenda las acciones de un funcionario no electo, a espaldas de la ley y de las nocionas más básicas de juego limpio ("fair play").

Una vez más la Mayoría de este Tribunal emite una Opinión desacertada en el contexto de la interpretación y aplicación del Código Electoral de Puerto Rico de 2020, infra. Esta vez, el criterio mayoritario descarta las disposiciones claras de la ley y se aparta de un principio jurídico fundamental: ninguna disposición reglamentaria puede contravenir una ley ni prevalecer por encima de ella. Particularmente, la Mayoría valida que, mediante un reglamento, se deje sin efecto un requisito estatutario que la Asamblea Legislativa estableció inequívocamente para la validación de un voto adelantado por correo: que el elector incluya, junto con su voto, una copia de su tarjeta de identificación electoral o cualquier otra identificación vigente con foto que la ley autorice. A pesar del lenguaje claro de la ley que establece que la validez del voto está sujeta al cumplimiento fiel de este requisito, la Mayoría valida que se alteren las normas **luego de comenzado el proceso electoral**. Peor aún, refrenda un mecanismo adoptado por reglamento para permitir que el elector "subsane" su incumplimiento con la ley. Ese mecanismo es contrario al texto

claro y terminante del Código Electoral de Puerto Rico de 2020, infra, y despoja al procedimiento del voto adelantado por correo de una de las medidas procesales que el legislador estatuyó para salvaguardar su transparencia y confiabilidad.

Este Tribunal no tiene un cheque en blanco para reescribir el Código Electoral. Pretenderlo, no solamente representa una falta de respeto a la función constitucional de esta institución, sino también a la deferencia que se le debe dar al rol de la legislatura. Nuestra Constitución establece que se debe garantizar el derecho al voto universal, **igual**, directo y secreto. Esa igualdad del voto es un concepto vital que proclama nuestra democracia y que está atada a las garantías de confiabilidad que requiere el ejercicio efectivo de ese voto.

Puerto Rico tiene una tradición de limpieza electoral inspirada por su Constitución y que es la base de sus procesos democráticos. A días de los comicios generales, nuestro rol debió ser sostener esa pureza al validar un proceso electoral que inspire la confianza pública, la cual incide de manera proporcional sobre la participación electoral.

I

El Código Electoral de Puerto Rico de 2020, Ley Núm. 58-2020 (Código Electoral), tiene como uno de sus propósitos principales "empoderar a los electores **facilitando** su derecho a los procesos relacionados con el ejercicio de su derecho al voto". Exposición de Motivos, Código Electoral. (Énfasis suplido). Cónsono con ese propósito, la ley establece

diferentes métodos a través de los cuales los electores pueden ejercer ese derecho. Uno de estos es el "Voto Adelantado", el cual el Código Electoral define como un "[m]étodo especial de Votación para garantizar el ejercicio del derecho al voto a los Electores elegibles, activos y domiciliados en Puerto Rico, cuando el día determinado para realizar una Votación confronten barreras o dificultades para asistir a su Centro de Votación". Art. 2.3(110), Código Electoral. Una de las modalidades del Voto Adelantado es el voto por correo. En torno a este método de votación, en lo pertinente, el Art. 9.39(3) del Código Electoral establece:

> En este caso, el Elector deberá devolver a la Comisión sus papeletas votadas a través del US Postal Service, con matasellos postal fechado no más tarde del día de la votación o Elección General. **Solamente se considerarán para contabilización aquellos votos adelantados válidamente emitidos** que sean recibidos en la Comisión por correo, en o antes del último día del escrutinio general del evento electoral. **La validación de este tipo de Voto Adelantado también <u>estará sujeta</u> a que el Elector <u>haya incluido</u> la copia de su tarjeta de identificación electoral o cualquier otra identificación con foto y vigente autorizada por esta Ley**. Se prohíbe que se requiera la notarización o testigos para poder ejercer el derecho al voto a través de Voto Adelantado. (Énfasis suplido).

Como se puede observar, esta disposición establece dos requisitos sustantivos esenciales para que el voto que se emita por correo sea válido: (1) que se reciba en la Comisión Estatal de Elecciones (CEE) en o antes del escrutinio general del evento electoral, y (2) que el elector **haya incluido con**

**su voto** la copia de su tarjeta de identificación electoral u otra identificación que el Código Electoral autorice. **El estatuto es claro, es específico y no contempla excepciones a esos requisitos.**

En conformidad con lo anterior, la Comisión Estatal de Elecciones (CEE) adoptó un *Reglamento de Voto Ausente y Voto Adelantado de Primarias 2020 y Elecciones Generales y Plebiscito 2020* (Reglamento de Voto Adelantado). Al igual que la ley, la Sección 6.9 del Reglamento de Voto Adelantado establece lo siguiente:

> Solamente para la elección se considerarán válidamente emitidos aquellos votos que sean enviados en o antes de una elección y recibidos en o antes del último día del escrutinio general para esa elección. **La validación de este tipo de voto adelantado por correo también estará sujeta a que el elector haya incluido la copia de su tarjeta de identificación electoral o cualquier otra identificación con foto y vigente autorizada por el Código Electoral.** Sección 6.9 del Reglamento de Voto Adelantado. (Énfasis suplido)

Además, la Sección 6.8 del Reglamento de Voto Adelantado preceptúa que al elector se le enviarán las instrucciones correspondientes para ejercer el derecho al voto por correo, incluyendo una "**[a]dvertencia al Elector** que debe incluir […] copia de la tarjeta de identificación electoral o cualquier otra identificación con foto vigente según establece el Código Electoral". Sección 6.8 del Reglamento de Voto Adelantado. (Énfasis suplido).

Los parámetros expuestos regían el procedimiento para ejercer y validar el voto adelantado por correo hasta hace

poco más de una semana.[20] Sin embargo, cuando restaba un periodo de tiempo sumamente corto para los comicios generales, la CEE -por conducto de su Presidente- aprobó una Resolución para enmendar el borrador del *Manual de Procedimientos para el Voto Adelantado por Correo para Elecciones Generales y Plebiscito 2020*. Mediante esa enmienda se estableció lo que se cita a continuación:

> En caso de que el elector **no haya incluido la copia de la identificación con foto vigente**, la JAVAA deberá notificar al elector de tal deficiencia a la brevedad y no más tarde de veinticuatro horas de haber identificado la deficiencia, como parte del proceso de apertura del sobre Número 2. La JAVAA deberá efectuar la notificación a través del número de teléfono, dirección de correo electrónico o dirección postal que fue provista por el elector en la solicitud de voto adelantado o que resulte de su registro electoral actualizado. En dicha notificación, la JAVAA deberá apercibir al elector que, **de no proveer la copia de la identificación en o antes de tres (3) días laborables de la notificación de la deficiencia, su voto no será adjudicado.** El elector podrá subsanar la deficiencia entregando copia de la identificación a través del correo electrónico de la JAVAA, personalmente en la Junta de Inscripción Permanente o enviando copia al fax: 787-777-8358.

Según se puede discernir, mediante la enmienda en cuestión se establece un mecanismo que el Código Electoral no contempla, a través del cual el elector que no haya incluido copia de su tarjeta electoral u otra identificación autorizada junto con su voto puede subsanar ese incumplimiento. Al contraponer este mecanismo con lo que establece taxativamente el Art. 9.39(3)

---

[20] Enfatizamos que las elecciones generales son en menos de una semana.

del Código Electoral, se puede apreciar que existe una contradicción insuperable entre ambos.

Como vimos, el Art. 9.39(3) del Código Electoral establece **claramente y sin ambages** que la inclusión de la copia de la identificación electoral u otra autorizada junto con el voto es un requisito indispensable para que el voto por correo sea válido. Nótese que el requisito se entiende satisfecho específicamente cuando el elector **haya incluido** la identificación junto con el voto que remite a la CEE mediante el servicio postal. El artículo no contempla excepciones a este requisito ni la posibilidad de "subsanar" su incumplimiento. Por el contrario, el lenguaje claro y terminante del estatuto revela que el legislador lo concibió como un aspecto fundamental en el proceso de validación y contabilización de los votos adelantados por correo. Sin embargo, el mecanismo de "subsanación" que se adoptó mediante la Resolución en controversia desplaza ese requisito, pues permite que el elector provea la identificación en un momento y mediante un método distinto al que el Código Electoral exige. Esto, a su vez, da al traste con una de las medidas procesales que el legislador adoptó para garantizar la transparencia del proceso de validación y contabilización de los votos adelantados por correo.

Adviértase que al exigir que la identificación se incluya junto con el voto se garantiza que la apertura del sobre que contiene la documentación aplicable, la corroboración de la identidad del elector y el depósito de la papeleta en la urna

correspondiente se realice de manera continua. **Esa continuidad preserva la pureza del procedimiento. El mecanismo de subsanación, según propuesto, rompe con esa continuidad, pues permite que el elector presente la identificación días después de haberse recibido su voto en la CEE.** Lo anterior deja al electorado con la duda sobre si su voto está sujeto a ser manipulado. Por lo tanto, no cabe duda de que el mecanismo de "subsanación" que el Presidente de la CEE aprobó desarticula y desvirtúa el método que la Asamblea Legislativa adoptó para el proceso de validación de los votos adelantos por correo. **A falta de garantías claras y específicas de su confiabilidad, procedimientos aprobados a la prisa y de forma improvisada como estos arrojan sombras sobre la pureza de los procesos electorales.**

Por otro lado, es un principio jurídico conocido que una actuación administrativa o "[u]n reglamento promulgado para implementar la ejecución de una ley **puede complementarla, pero no puede estar en conflicto con ésta, pues ello conlleva la sustitución del criterio del legislador por el de la agencia** autorizada a reglamentar". <u>Yiyi Motors, Inc. v. ELA</u>, 177 DPR 230, 248 (2009). (Énfasis suplido). Una actuación administrativa o disposición reglamentaria que conflige con la ley "tiene que ceder ante el mandato legislativo ya que el texto de una ley jamás debe entenderse modificado o suplantado por el reglamentario…". <u>Íd.</u> En resumidas cuentas, "un reglamento o actuación administrativa claramente en conflicto, o en contra de la ley, es nulo". <u>Íd.</u> Aquí, indudablemente,

tanto la actuación administrativa del Presidente de la CEE como la norma que aprobó contravienen el texto claro del Art. 9.39(3) del Código Electoral. Por consiguiente, la conclusión forzosa es que son nulas.

La Mayoría intenta rebatir esa nulidad al argumentar que la actuación administrativa fue necesaria para llenar una laguna o vacío en la ley, a pesar de que -de manera contradictoria- acepta que es clara. A esos efectos, aduce que el Código Electoral no establece el proceso que el elector tiene que seguir si omite incluir copia de su identificación, de manera que pueda garantizar su debido proceso de ley. En esa misma línea, arguye que una aplicación literal del Art. 9.39(3) del Código Electoral tendría efectos normativos que colisionarían con las disposiciones constitucionales y estatutarias que otorgan supremacía al sufragio accesible y sin barreras procesales onerosas.

En efecto, el Código Electoral no establece un procedimiento para los casos en que los electores omitan incluir la identificación junto con su voto. Eso no implica que existe una laguna en la ley ni que por eso se viola el debido proceso de ley del elector. El hecho de que la ley no establezca el procedimiento al que la Mayoría alude responde al hecho de que la consecuencia de no incluir la identificación es clara y absoluta: el voto no es válido. El incumplimiento con ese requisito no se puede subsanar. Esto hace innecesario instaurar un procedimiento que permita al elector solicitar la reconsideración de esa determinación. En todo caso, el

mecanismo aquí en controversia no tiene ese alcance ni propósito. En segundo lugar, a pesar de que no existe ese procedimiento, el Art. 9.39(3) del Código Electoral y el Reglamento de Voto Adelantado contienen las salvaguardas necesarias para garantizar al elector el debido proceso de ley. Según expuse anteriormente, como parte del procedimiento que se sigue cuando se le remite al elector las papeletas por correo, **se incluye una instrucción y advertencia específica a los fines de que este deberá incluir una copia de su tarjeta electoral u otra identificación** permitida por ley junto con el voto que remita a la CEE mediante el servicio postal. Esta advertencia es suficiente para que el elector esté debidamente notificado de los requisitos que tiene que cumplir para que su voto sea válido y se pueda contabilizar. Ante la notificación adecuada de las normas mínimas que se deben satisfacer, no cabe hablar de una violación al debido proceso de ley del elector cuyo voto no sea contado por haber incumplido esas normas. Este escenario es similar al del elector que no presenta una identificación al momento de votar, pues a este no se le permite ejercer su derecho al voto.

Todo elector tiene derecho a una accesibilidad amplia en el ejercicio de su derecho al voto. Sin embargo, los electores también tienen la responsabilidad de cumplir con los requisitos que el ordenamiento exige **para que los procesos eleccionarios se den dentro de un marco de imparcialidad, pureza y transparencia.** Solo de esa forma, el voto de los demás electores que ejercieron su derecho en cumplimiento con los

requisitos aplicables no se verá diluido a causa del empleo de prácticas fraudulentas en el proceso de contabilización y adjudicación de los votos. Esto es cónsono con la misión de la CEE: "garantizar que los servicios, procesos y eventos electorales se planifiquen, organicen y realicen con **pureza, transparencia, seguridad, certeza, rapidez**, accesibilidad y facilidad para los electores de manera costo-eficiente, **libre de fraude y coacción**; y sin inclinación a ningún grupo o sector ni tendencia ideológica o partidista". Art. 3.1 del Código Electoral. (Énfasis suplido).

No podemos olvidar que el método de voto adelantado por correo, aunque está diseñado para facilitar el ejercicio del derecho al voto, necesariamente tiene que contar con unas salvaguardas procesales mínimas que garanticen la transparencia del proceso electoral y la igualdad del voto de todos los electores. Indiscutiblemente, el requisito que la enmienda aquí en controversia pretende descartar tiene como fin garantizar que el voto adelantado por correo no esté propenso a manipulación o a actuaciones fraudulentas. Esta no es una condición onerosa, ni dificulta irrazonablemente el ejercicio del derecho al voto. La presentación de una identificación válida es un requisito que se exige a todo elector que desea ejercer su derecho al voto, independientemente del método que escoja. Esto demuestra que la identificación adecuada del elector es una de las salvaguardas más importantes para evitar el fraude electoral. Tan es así que un elector que no presente ningún tipo de

identificación al momento de votar no podrá ejercer su derecho al voto.

Aun así, la Mayoría afirma que, mediante esta determinación, no le resta a la identificación la importancia que tiene para garantizar la pureza de los procedimientos ni descarta el requisito que la ley impone.[21] Resulta difícil aceptar esa aseveración cuando la Mayoría califica como un mero requisito de forma subsanable el incluir, como exige la ley, la tarjeta electoral u otra identificación autorizada junto con el voto que se remita a la CEE por correo. Lo anterior, sobre todo cuando esa calificación es incorrecta. De una simple lectura del Art. 9.39(3) del Código Electoral se puede colegir que el legislador lo estatuyó como **un requisito sustantivo**, que además, es **indispensable** para la validez del voto emitido por correo.

Para finalizar, destaco que el mecanismo adoptado por el Presidente de la CEE tiene además el potencial de retrasar la certificación de los resultados de la contienda electoral. Esto es así, pues si la CEE recibe el mismo día del escrutinio general el voto de un elector que votó por correo y no incluyó la identificación requerida, este contará con tres días a partir de que le notifiquen el incumplimiento con ese requisito para "subsanarlo". Ello implica que la contabilización de los votos no se podrá concluir hasta que transcurra ese término. Esto arroja sombras sobre el proceso, el cual está propenso a

---

[21] Opinión mayoritaria, pág. 40.

ser cuestionado por los cambios arbitrarios e ilegales que ha sufrido a último momento.

En fin, en la jerarquía del derecho, la ley prevalece sobre cualquier disposición reglamentaria o actuación administrativa que sea contraria a esta. Por consiguiente, si la regla o actuación administrativa contraviene el texto legal, esta es nula; sencillamente no puede prevalecer por encima de la ley.

La Mayoría parece olvidar estos principios fundamentales de derecho y, con su decisión, sustituye la voluntad del legislador por el criterio de un funcionario que no fue electo por el Pueblo y que actuó de espaldas a la ley que está obligado a cumplir y hacer cumplir. **Peor aún, bajo el manto de la democracia y el "acceso al voto" se trastocan medidas básicas que garantizan la transparencia y la confiabilidad del voto y se facilita la posibilidad de manipular, de forma acomodaticia, los votos de ciertos electores.** No puedo estar de acuerdo con ese proceder. Por consiguiente, disiento.

> Maite D. Oronoz Rodríguez
> Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Nicolás Gautier Vega, en su capacidad de Comisionado Electoral del Partido Popular Democrático<br><br>Recurrido<br><br>v.<br><br>Comisión Estatal de Elecciones; Francisco Rosado Colomer, en su capacidad de Presidente de la CEE; Roberto I. Aponte Berríos, en su capacidad de Comisionado Electoral del Partido Independentista Puertorriqueño; Olvin Valentín Rivera, en su capacidad de Comisionado Electoral del Movimiento Victoria Ciudadana; y Edwardo García Rexach, en su capacidad de Comisionado Electoral del Proyecto Dignidad<br><br>Partes con Interés<br><br>Héctor Joaquín Sánchez Álvarez, en su capacidad de Comisionado Electoral del Partido Nuevo Progresista<br><br>Parte Peticionaria en Certificación | CT-2020-22 |

Opinión Disidente emitida por el Juez Asociado señor COLÓN PÉREZ a la que se une la Juez Asociada señora RODRÍGUEZ RODRÍGUEZ.

En San Juan, Puerto Rico a 28 de octubre de 2020.

> *"Si deseamos una sociedad democrática, entonces la democracia se debe convertir en un medio, así como en un fin."* – Bayard Rustin.

En un tercer intento por reescribir las leyes electorales que rigen en el País, esta vez con el único fin de dar paso a una posible manipulación de los votos que se emitan en los comicios electorales que han de tomar lugar el próximo 3 de noviembre de 2020, mis compañeros y compañera

de estrado continúan participando del guion de esta saga, que supone ser una tragicomedia de errores, cuyo actor estelar es el Comisionado Electoral del Partido Nuevo Progresista, el Sr. Héctor Joaquín Sánchez Álvarez (en adelante, "señor Sánchez Álvarez").[22]

En este acto de la triste historia que se desarrolla en la Comisión Estatal de Elecciones, y en claro desafío de los más fundamentales principios que componen el ordenamiento electoral puertorriqueño, el Comisionado Electoral del Partido Nuevo Progresista, el señor Sánchez Álvarez, al parecer desconociendo el alcance de sus funciones, ha decidido abrogarse las facultades de legislador y -- con el aval del Presidente de la Comisión Estatal de Elecciones -- reescribir los preceptos que guían y velan por un proceso electoral puro, transparente y libre de artimañas. Esto, mediante la incorporación de cierto inciso en el *Manual de Procedimientos Para el Voto Adelantado por Correo Para Elecciones Generales y Plebiscito 2020*, *infra*, que, a todas

---

[22] Recordemos que, en *Gautier Vega et al. v. Com. Electoral PNP*, 2020 TSPR 124, 205 DPR ____ (2020), este Tribunal validó un acuerdo de los Comisionados Electorales que enmendaba el Art. 5.17 del Código Electoral de 2020, *infra*, causando así que se extendiera el término para presentar recusaciones.

Posteriormente, entiéndase aproximadamente una semana después, en *Suárez Molina v. Comisión Local de Elecciones de Cataño, et al.* 2020 TSPR___, 205 DPR____(2020), mis compañeros y compañera de estrado resolvieron que el trámite para revisar una determinación adversa emitida por el presidente de una Comisión Local de Elecciones en un proceso de recusación por domicilio se llevaría a cabo conforme al procedimiento establecido para impugnar los demás tipos de recusaciones -- es decir, ante la Comisión Estatal de Elecciones --, lo cual es contrario a la excepción dispuesta en el Art.5.16 del Código Electoral de 2020, *infra.*

Ambos procederes fueron, a todas luces, incorrectos; por lo que en los dos escenarios antes reseñados nos vimos en la obligación de disentir.

luces, es *ultra vires* y contrario a lo dispuesto en el Código

Electoral de 2020, *infra*.[23]

Lamentablemente, en lo que resulta ser una decisión que atenta contra la credibilidad que enviste a este Tribunal, una mayoría de los miembros de este Foro ha optado por avalar dicho proceder y, nuevamente, en otro acto de malabarismo jurídico, otorgarle primacía a un acuerdo -- reducido a *Manual* -- de la Comisión Estatal de Elecciones, por encima de las leyes que componen el ordenamiento jurídico puertorriqueño. Siendo ello así, nos negamos a permanecer silentes ante semejante atropello y reiteramos nuestra obligación de disentir. Veamos.

### I.

Los hechos medulares que dieron margen al presente litigio se resumen con particular precisión en la Opinión que hoy emite este Tribunal, razón por la cual hemos decidido adoptarlos por referencia. En esencia, nos corresponde determinar cuál es el procedimiento correcto en ley que se debe seguir al momento de efectuar un **voto adelantado por correo**, -- específicamente, cuál es el trámite de identificación del elector o electora que opta por esa forma de votar --, de modo que este pueda ser válidamente adjudicado. Lo anterior, con el fin de auscultar si los

---

[23] Por inadvertencia, en nuestras expresiones contenidas en la *Resolución* emitida el 25 de octubre de 2020 -- disponiendo los términos para que las partes expresaran su posición respecto al *Recurso de Certificación* de autos -- hicimos mención del *Manual del Voto Adelantado en el Colegio de Fácil Acceso en el Domicilio: Elecciones Generales y Plebiscito 2020*, cuando en realidad debió leer *Manual de Procedimientos para el Voto Adelantado por Correo para Elecciones Generales y Plebiscito 2020*.

Comisionados Electorales de los distintos partidos políticos, así como el Presidente de la Comisión Estatal de Elecciones, estaban facultados para -- mediante acuerdo y con la aprobación de un nuevo inciso al *Manual de Procedimientos Para el Voto Adelantado por Correo para Elecciones Generales y Plebiscito 2020*, *infra*, (en adelante "*Manual de Procedimientos Para el Voto Adelantado por Correo*") -- variar lo dispuesto en ley, y disponer que el elector o electora que emita su voto adelantado por correo, y omita incluir su identificación en los sobres utilizados para ese propósito, posteriormente pueda enviarla a la Junta Administrativa de Voto Adelantado y Voto Ausente (en adelante, "JAVAA") o a la Junta de Inscripción Permanente (en adelante, "JIP"). Lo anterior, en clara contravención a lo dispuesto en el Art. 9.39 del Código Electoral 2020, *infra*.

En específico, el referido inciso del *Manual de Procedimientos Para el Voto Adelantado por Correo* dispone que, en caso de que el elector o electora -- al momento de devolver su voto a la Comisión Estatal de Elecciones -- no incluya copia de la identificación con foto vigente, la JAVAA le notificará tal deficiencia no más tarde de veinticuatro (24) horas de haberla identificado. En dicha notificación, se deberá apercibir al elector o electora que de no proveer la copia de la identificación en o antes de tres (3) días laborables de la notificación de la deficiencia, su voto no será adjudicado. Asimismo, la enmienda al mencionado *Manual* expresa que, "en caso de no subsanar tal deficiencia, la JAVAA

notificará al elector, la decisión de invalidar su voto, apercibiéndole de su derecho de pedir revisión conforme a la Sección 9.1 del Reglamento de Voto Ausente y Voto Adelantado de Primarias 2020 y Elecciones Generales y Plebiscito 2020." *Manual de Procedimientos Para el Voto Adelantado Por Correo,* págs. 8-9.

Por un lado, en su comparecencia ante esta Curia, el Comisionado Electoral del Partido Nuevo Progresista, el señor Sánchez Álvarez, aduce que la referida enmienda al *Manual de Procedimientos Para el Voto Adelantado por Correo* busca proveerle al elector o electora un mecanismo para subsanar deficiencias en el voto adelantado por correo, ante las alegadas confusiones y falta de instrucciones claras sobre este mecanismo. Por ello, sostiene que el Presidente de la Comisión Estatal de Elecciones estaba facultado para aprobar dicho cambio.

De otra parte, comparece ante nos el Presidente de la Comisión Estatal de Elecciones, Hon. Francisco Rosado Colomer (en adelante "juez Rosado Colomer"), quien esboza argumentos similares a los del señor Sánchez Álvarez. En apretada síntesis, indica que, como Presidente de la Comisión Estatal de Elecciones, tiene el deber ministerial de interpretar el Código Electoral de 2020, *infra,* de forma que garantice al elector su derecho al voto. Conforme a dicha encomienda, aprobó la enmienda al *Manual de Procedimientos para el Voto Adelantado por Correo, infra,* con el fin de no privarle a los

electores y electoras de tan fundamental derecho y de un debido proceso de ley.

Finalmente, toca las puertas de este Tribunal el Lcdo. Nicolás Gautier Vega (en adelante, "licenciado Gautier Vega"), en su capacidad de Comisionado Electoral de Partido Popular Democrático, y arguye que tanto el Código Electoral de 2020, *infra*, como el *Reglamento de Voto Ausente y Voto Adelantado de 2020, infra*, son claros en que el envío de copia de la tarjeta de identificación electoral o cualquier otra identificación con foto vigente autorizada, al momento de emitir el voto adelantado por correo, compone un requisito *sine qua non* para emitir ese tipo de voto adelantado. Por ello, alega que la enmienda al *Manual de Procedimientos Para el Voto Adelantado por Correo* en controversia contraviene lo claramente dispuesto en el Código Electoral de 2020, *infra*.

Trabada así la controversia, y con el beneficio de la comparecencia de las partes con interés en el litigio, procedemos a discutir el derecho aplicable.

II.

A.

Como es sabido, el derecho al voto de toda persona domiciliada en Puerto Rico se encuentra consagrado en el Art. II, Sec. 2, de la Constitución del Estado Libre Asociado de Puerto Rico. Éste es reconocido como uno de los pilares más fundamentales de nuestro sistema democrático. A esos fines, el referido artículo dispone que las leyes adoptadas por la Asamblea Legislativa "garantizarán la expresión de la

voluntad del pueblo mediante el sufragio universal, igual, directo y secreto, y protegerán al ciudadano contra toda coacción en el ejercicio de la prerrogativa electoral". CONST. ELA art. II, § 2, LPRA, Tomo 1.

En esa dirección, el Art. VI, Sec. 4, de nuestra Constitución, señala específicamente que se dispondrá por ley todo lo relativo a los procesos electorales y de inscripción de electores, al igual que lo concerniente a los partidos políticos y las candidaturas. CONST. ELA art. VI, § 4, LPRA, Tomo 1. A tono con lo anterior, "[l]a Asamblea Legislativa tiene la facultad y la obligación de aprobar aquella reglamentación que, sin obstaculizar innecesariamente el derecho al voto en todas sus dimensiones, propenda a la realización de un proceso electoral justo, ordenado, libre de fraude, honesto e integro". *P.A.C. v. ELA*, 150 DPR 359 (2000); *P.S.P., P.P.D., P.I.P. v. Romero Barceló*, 110 DPR 248 (1980); *P.S.P. v. Com. Estatal de Elecciones*, 110 DPR 400 (1980); *P.N.P. v. Tribunal Electoral*, 104 DPR 741 (1976).

Como corolario del derecho que tienen los miembros de la Asamblea Legislativa para regular el proceso electoral en el País, recientemente se aprobó el Código Electoral de 2020, 2020 LPR 58, el cual, en lo pertinente a la controversia que nos ocupa, instauró el derecho al voto por adelantado para todo elector o electora domiciliado en Puerto Rico y activo en el Registro de Electores. Lo anterior, con el propósito de garantizarles el sufragio a quienes afirmen y declaren bajo juramento la imposibilidad de asistir al colegio de votación

en el día de las elecciones. Art. 2.3 (110) del Código Electoral de 2020, *supra*.

Cónsono con ello, el Art. 9.37(1) del precitado Código Electoral, *supra*, establece las razones por las cuales un elector o electora podría estar imposibilitado de asistir al centro de votaciones, cualificando así para ejercer su derecho al sufragio mediante el voto adelantado. Sobre el particular, la Asamblea Legislativa enumeró varias instancias en las que un elector o electora podrá solicitar el voto adelantado, a saber: (1) elector en el trabajo; (2) elector cuidador único; (3) elector hospitalizado; (4) elector candidato; (5) elector viajero; (6) elector con impedimento físico; (7) elector con voto de fácil acceso en domicilio; (8) elector en casa de alojamiento; y (9) elector confinado. *Íd.*

Así pues, el voto adelantado se podrá tramitar mediante distintas vías contempladas en el *Reglamento de Voto Ausente y Voto Adelantado de Primarias 2020 y Elecciones Generales y Plebiscito 2020* de 13 de marzo de 2020, (en adelante "*Reglamento de Voto Ausente y Voto Adelantado de 2020*"), el cual se aprobó en virtud de lo dispuesto en el Código Electoral de 2020, *supra*. Específicamente, el referido *Reglamento* contempla el voto adelantado en precinto electoral, el voto adelantado en el domicilio, y el **voto adelantado por correo.** *Reglamento de Voto Ausente y Voto Adelantado de 2020*, *supra*, págs. 20-21. De igual modo, el voto adelantado se da en las instituciones penales y juveniles lo cual queda reglamentado

en el Título VII del referido *Reglamento*. *Íd*. en las págs. 22-25.

De otra parte, y también de conformidad con lo dispuesto en el Código Electoral de 2020, *supra*, se creó la Junta Administrativa de Voto Ausente y Adelantado (en adelante, "JAVAA") con el propósito de administrar el proceso de solicitud, votación y adjudicación del voto ausente y el voto adelantado. Dentro de las encomiendas asignadas a la JAVAA, se encuentra preparar "un borrador de reglamento para instrumentar todos los métodos de votación para el Voto Ausente y el Voto Adelantado". Art.9.40(4) del Código Electoral de 2020, *supra*. Cumpliendo con dicha encomienda, es que la Comisión Estatal de Elecciones aprueba el *Manual de Procedimientos Para el Voto Adelantado por Correo* de 20 de octubre de 2020.

Siendo el *Manual de Procedimientos Para el Voto Adelantado por Correo*, *supra*, -- por mandato de su ley habilitadora --, el encargado de disponer los particulares relativos al voto adelantado por correo, nos remitiremos a él para auscultar el procedimiento a seguir para efectuar dicho voto en todas sus vertientes. En lo pertinente, el referido *Manual* dispone que quienes deseen emitir su **voto adelantado por correo** deberán completar en su totalidad el formulario que provea la Comisión Estatal de Elecciones para ello e incluir todos los datos que se le soliciten para así corroborar su identidad. *Manual de Procedimientos Para el Voto Adelantado por Correo*, *supra*, pág. 5.

Sobre las instancias en que se permite solicitar el **voto adelantado por correo**, el referido *Manual* dispone que el mismo puede ser solicitado cuando se trate de: (1) los miembros y empleados y empleadas de la Comisión o asesor legal de los Comisionados(as) Electorales; (2) las personas realizando gestiones durante las elecciones generales para uno de los candidatos certificados a la gobernación; (3) los Oficiales de Inscripción de los Precinto; (4) los Presidentes de la Comisión Local de Elecciones en Propiedad y Alterno; (5) los Comisionados Electorales del Precinto en Propiedad y Alterno; y (6) las personas mayores de sesenta (60) años. *Manual de Procedimientos para el Voto Adelantado por Correo*, *supra*, págs. 3-4.

De tratarse de uno de los anteriores escenarios, y una vez la solicitud del elector o electora para emitir su **voto por adelantado por correo** sea aprobada por la Comisión Estatal de Elecciones, tanto el Código Electoral de 2020, *supra*, como el *Manual de Procedimientos para el Voto Adelantado por Correo*, *supra*, -- disposiciones legales y reglamentarias que gobiernan el asunto --, establecen que éste o ésta se suscribirá al siguiente proceso para asegurar la validez de su voto, a saber: **(1) la papeleta le será enviada al elector o electora a través del *US Postal Service* o por correo electrónico; (2) el elector o electora devolverá a la Comisión Estatal de Elecciones sus papeletas a través del *US Postal Service* con el matasellos postal fechado no más tarde del día de la votación o elección general ;y (3) una vez se reciban**

**los votos en la Comisión Estatal de Elecciones, a través de la JAVAA, los votos recibidos serán contabilizados y <u>su validación "estará sujeta a que el Elector haya incluido la copia de su tarjeta de identificación electoral o cualquier otra identificación con foto vigente autorizada por esta Ley".</u>**[24] Art. 9.39 del Código Electoral de 2020, *supra; Manual de Procedimientos para el Voto Adelantado por Correo*, *supra*, pág.5. *Véase*, también el Art. 6.9 del *Reglamento de Voto Ausente y Voto Adelantado de 2020*, *supra*, pág. 22.

Por otro lado, y por ser en extremo importante para la correcta disposición de la controversia ante nuestra consideración, también conviene señalar aquí que la sección 6.8 (4) del *Reglamento de Voto Ausente y Voto Adelantado de 2020,* que dispone lo concerniente a la papeleta de votación de **voto adelantado por correo**, establece que junto a las papeletas se enviará "las instrucciones correspondientes a esta Sección y cualesquiera que sean necesarias, tales como: <u>[a]dvertencia al elector que deb[e] incluir en el sobre Número 2 copia de la tarjeta de identificación electoral o cualquier otra identificación con foto vigente, según establece el Código Electoral.</u>" (Énfasis suplido). *Reglamento de Voto Ausente y Voto Adelantado de 2020*, *supra*, pág. 22.

---

[24] Así mismo, el *Reglamento de Voto Ausente y Voto Adelantado de 2020*, *supra*, en su Art. 6.9, contiene una disposición análoga que reitera el requerimiento del carné para la validación del voto. Es claro, pues, que la constante mención de la identificación como vehículo para la legitimación del sufragio emana del ineludible deber de evitar el fraude electoral.

El requisito del envío de copia de la tarjeta de identificación electoral o cualquier otra identificación con foto vigente autorizada, al momento de emitir el voto adelantado por correo al que hemos hecho referencia, y que dispone tanto el Código Electoral de 2020, *supra*, como el precitado *Reglamento* y el *Manual de Procedimientos Para el Voto Adelantado por Correo*, es análogo al procedimiento del voto en persona que requiere al elector o electora traer consigo su identificación electoral al momento de emitir su voto. Es decir, bajo ningún supuesto un elector o electora puede emitir su voto y luego proveer a los funcionarios la identificación correspondiente para validar el mismo. Precisamente, porque esa validación es simultánea al ejercicio al voto y no posterior a ella. Lo anterior no admite interpretación en contrario. **Esa <u>unidad de acto</u> es esencial para garantizar la pureza del proceso electoral que se avecina.**

Distinto a como sostiene la mayoría de este Tribunal, en un intento por crear confusión, el requisito de presentar una identificación al momento de ejercer el derecho al voto también está presente cuando se trata de electores añadidos a mano. Al respecto, el Código Electoral de 2020, *supra*, en su Artículo 9.15 señala que, en cada centro de votación de Unidad Electoral, se establecerá un colegio especial para electores o electoras que no hayan sido incluidos en las listas de votantes y reclamen tener derecho al voto. Estos electores o electoras deberán proveer a los funcionarios del

colegio su identificación electoral o cualquier otra identificación debidamente autorizada por el referido cuerpo de ley. Art. 9.15 del Código Electoral de 2020, *supra*. Es decir, el elector o electora sí presenta una tarjeta de identificación al momento de emitir su voto, lo que sucede es que no aparece en la lista oficial de votantes y por eso se refiere a un colegio de votación para ser añadido a mano.[25]

B.

Así las cosas, siendo el Código Electoral de 2020, *supra*, claro en cuanto al requisito del envío de copia de la tarjeta de identificación electoral o cualquier otra identificación con foto vigente autorizada, al momento de emitir el voto adelantado por correo, es menester señalar que el precitado cuerpo de ley también enumera las facultades y deberes que se le confieren al Presidente de la Comisión Estatal de Elecciones. Art. 3.8 del Código Electoral de 2020, *supra*. **En lo pertinente, dispone que -- cónsono con su autoridad ejecutiva y administrativa -- este último viene obligado a cumplir con lo dispuesto en nuestra Carta Magna y en el Código Electoral de 2020, *supra*.** Cualquier acuerdo en contrario a lo allí dispuesto sería, a todas luces, totalmente nulo.

---

[25] La opinión mayoritaria dispone que la omisión de la identificación no puede representar la anulación del voto, sin la debida notificación y oportunidad de subsanar la deficiencia. A los efectos, citan el Artículo 9.26 del Código Electoral de 2020, *supra*, el cual esboza que todo elector o electora que no muestre una identificación válida autorizada por esta Ley votará en el colegio de "Añadidos a Mano." No obstante, puntualizamos que a lo que se refiere el precitado Artículo es a aquellas instancias en que el elector sí presenta una identificación, pero la misma no es válida.

Además, y de conformidad con lo dispuesto en el precitado cuerpo de ley, el Presidente de la Comisión Estatal de Elecciones ostenta la responsabilidad y el deber de supervisar los servicios, procesos y eventos electorales en un ambiente de absoluta pureza e imparcialidad. *Íd.* A ello, éste está llamado.

Es, pues, a la luz de la normativa antes expuesta, y no de otra, que procedía disponer de las controversias ante nuestra consideración. Como una mayoría de este Tribunal así no lo hizo, procedemos -- desde el disenso -- a disponer del caso que nos ocupa de la manera que el Código Electoral nos exige.

Al igual que lo hemos hecho recientemente en controversias de similar naturaleza, ello lo realizamos teniendo siempre presente que "cuando la ley es clara [y] libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir con su espíritu." Art. 14 del Código Civil de Puerto Rico, 31 LPRA sec. 14. Cónsono con este precepto, este foro ha expresado que "cuando el legislador se ha manifestado en lenguaje claro e inequívoco, el texto de la ley es la expresión por excelencia de toda intención legislativa." *Juarbe v. Registrador*, 156 DPR 387, 393 (2002); *Santiago Meléndez v. Superintendente de la Policía de P.R*, 151 DPR 511 (2000); *Alejandro Rivera v. ELA*, 140 DPR 538, 545 (1996).

IV.

Como mencionamos anteriormente, en el presente caso, el Comisionado Electoral del Partido Nuevo Progresista, el señor Sánchez Álvarez, sostiene que la enmienda al *Manual de Procedimientos para el Voto Adelantado por Correo*, *supra*, no solo se sustenta en derecho, sino que busca proteger el derecho al voto de los ciudadanos y ciudadanas de este País. No le asiste la razón.  A todas luces, estamos ante un escenario donde -- una vez más -- el señor Sánchez Álvarez y el Presidente de la Comisión Estatal de Elecciones, de manera caprichosa, actúan al margen de la ley.

Como ya hemos visto, basta con señalar que el Código Electoral de 2020, *supra*, es claro al requerir que, una vez la Comisión Estatal de Elecciones reciba los votos adelantados por correo, éstos se contabilizarán y su validación estará sujeta a que el elector o electora haya incluido la copia de su tarjeta de identificación electoral o cualquier otra identificación con foto vigente autorizada por esta ley. **Reiteramos, esa <u>unidad de acto</u> es esencial para garantizar la pureza del proceso electoral que se avecina.**

Dicho proceso dispuesto en ley, no podía, ni puede ser variado a través de un acuerdo *ultra vires* de los Comisionados Electorales de distintos partidos políticos, y que se recoge en el *Manual de Procedimientos para el Voto Adelantado por Correo*. Proceso que, de manera ilegal, aprueban los Comisionados Electores para permitir que un votante emita su voto sin la debida identificación, y que luego la JAVAA le

notifique en un término de veinticuatro (24) horas al elector o electora que cuenta con tres (3) días para subsanar tan craso error.

Las razones que el Comisionado Electoral del Partido Nuevo Progresista, el señor Sánchez Álvarez, esboza en su escrito ante esta Curia, para dejar a un lado lo dispuesto en ley **-- y sustituirlo por un proceso donde el voto del elector o electora, a todas luces, puede ser manipulado --** son altamente cuestionables. No queremos pensar que estamos ante una secuela del atropellado proceso primarista que vivió el País en el verano de 2020.

Y es que nada de lo dispuesto en *el Manual de Procedimientos Para el Voto Adelantado por Correo*, *supra*, garantiza que no se abran los sobres sellados que contienen las papeleteas de los electores o electoras que decidieron emitir un voto adelantado por correo, violando así la secretividad del voto tan fundamental en los procesos electorales aquí en controversia. De igual forma, nada garantiza que no se determine llamar a unos electores o electoras que no incluyeron su tarjeta de identificación electoral al momento de votar adelantado por correo, y a otros no. Por último, nada garantiza que esos sobres una vez abiertos, van a ser debidamente custodiados para conservar la pureza del proceso.

En fin, nuestra tarea hoy era **garantizar** el derecho al voto de todo elector o electora, no **manipular** el derecho al

voto de éstos y éstas. Lo anterior, son dos cosas muy distintas. Al menos el juez que suscribe, entiende cumplió con su función constitucional.

**Repetimos, nuestra democracia transita por un camino muy escarpado y, aparentemente, está en manos de quienes no la respetan.**

V.

Es, pues, por todo la anterior que enérgicamente disentimos del lamentable y desacertado curso de acción seguido por una mayoría de este Tribunal en el día de hoy.

Ángel Colón Pérez
Juez Asociado